IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KOKI HOLDINGS CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | C.A. No. 18-313 (CFC) |
| v. | ) | |
| | ) | |
| KYOCERA SENCO INDUSTRIAL | ) | |
| TOOLS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT THAT
U.S. PATENT NOS. 7,156,012 AND 7,398,647 ARE NOT INVALID**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com
*Attorneys for Plaintiff
Koki Holdings Co., Ltd.*

OF COUNSEL:

Paul Devinsky
Stephen J. Smith
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC  20001
(202) 756-8000

Amol A. Parikh
Thomas DaMario
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL  60606
(312) 372-2000

Hitoshi Akiba
KILPATRICK TOWNSEND & STOCKTON LLP
The Imperial Tower, 15th Floor
1-1-1 Uchisaiwaicho,
Chiyoda-ku, Tokyo,
Japan 100
+81.3.350.756.09

June 19, 2020

**TABLE OF CONTENTS**

I.    NATURE AND STATE OF PROCEEDINGS ...............................................1

II.   STATEMENT OF FACTS ....................................................................2

      A.   U.S. Patent Nos. 7,156,012 and 7,398,647 ..........................................3

      B.   Kyocera Infringement and Invalidity Contentions...............................6

III.  SUMMARY OF ARGUMENT ........................................................7

IV.   LEGAL STANDARDS .......................................................................8

      A.   Summary Judgment................................................................8

      B.   Anticipation.........................................................................9

      C.   Obviousness..........................................................................11

V.    ARGUMENT.......................................................................................12

      A.   The Asserted Prior Art Does Not Meet the '012 and '647
           Ratio Limitations ...............................................................12

           1.   The '012 and '647 Ratio Limitations Require the
                Cross-Sectional Area of the First Channel/Main Valve
                Control Channel be the Cross-Sectional Area of a Single
                Channel.......................................................................12

           2.   Kyocera Cannot Prove That the SN325+ Model
                Anticipates Claim 1 of the '647 Patent and Claim 1 of the
                '012 Patent..................................................................17

           3.   Kyocera Cannot Prove That the SN325+ Model
                Renders Obvious Claims 1 and 10 of the '647 Patent and
                Claims 1-4 of the '012 Patent.............................................18

      B.   Kyocera Cannot Prove That the SN325+ Model Qualifies
           as Prior Art Under 35 U.S.C. § 102..........................................19

VI.   CONCLUSION....................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abtox, Inc. v. Exitron Corp.*,
  122 F.3d 1019 (Fed. Cir. 1997), *opinion amended on reh'g,*
  131 F.3d 1009 (Fed. Cir. 1997) ....................................................................17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)....................................................................................8, 9

*Avia Grp. Int'l, Inc. v. L.A. Gear, Cal. Inc.*,
  853 F.2d 1557 (Fed. Cir. 1988) ........................................................................9

*Bennett Regulator Guards, Inc. v. Canadian Meter Co.*,
  184 F. App'x 977 (Fed. Cir. 2006) ................................................................11

*CANVS Corp. v. Nivisys, LLC*,
  No. 2:14-CV-99-FTM-38MRM, 2015 WL 6560621 (M.D. Fla.
  Oct. 29, 2015) ..........................................................................................14, 17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).........................................................................................8

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
  725 F.3d 1341 (Fed. Cir. 2013) .....................................................................10

*Dana Corp. v. American Axle & Mfg., Inc.*,
  279 F.3d 1372 (Fed. Cir. 2002) .....................................................................10

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) .....................................................................13

*Hilgraeve, Inc. v. Symantec Corp.*,
  271 F. Supp. 2d 964 (E.D. Mich. 2003) ...................................................21, 22

*IGT v. Bally Gaming Int'l, Inc.*,
  610 F. Supp. 2d 288 (D. Del. 2009),
  *aff'd*, 659 F.3d 1109 (Fed. Cir. 2011)..............................................................11

*Insight Tech., Inc. v. SureFire, LLC,*
No. 04-cv-74-JD, 2007 WL 3244092 (D.N.H. 2007)..........................................22

*Insituform Techs., Inc. v. Cat Contracting, Inc.,*
99 F.3d 1098 (Fed. Cir. 1996) ........................................................................14

*Invitrogen Corp. v. Biocrest Mfg.,*
424 F.3d 1374 (Fed. Cir. 2005) ......................................................................10

*James Julian, Inc. v. Raytheon Co.,*
557 F. Supp. 1058 (D. Del. 1983).....................................................................22

*Jutrowski v. Twp. of Riverdale,*
904 F.3d 280 (3d Cir. 2018) .............................................................................9

*KSR Int'l Co. v. Teleflex Inc.,*
550 U.S. 398 (2007)..............................................................................11, 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)..........................................................................................9

*Medichem, S.A. v. Rolabo, S.L.,*
437 F.3d 1157 (Fed. Cir. 2006) ......................................................................19

*Metalcraft of Mayville, Inc. v. The Toro Co.,*
848 F.3d 1358 (Fed. Cir. 2017) ......................................................................12

*Microsoft Corp. v. i4i Ltd. P'ship,*
564 U.S. 91 (2011)............................................................................................9

*Minnesota Mining & Mfg. Co. v. Chemque, Inc.,*
303 F.3d 1294 (Fed. Cir. 2002) ......................................................................10

*Net MoneyIN v. VeriSign, Inc.,*
545 F.3d 1359 (Fed. Cir. 2008) ......................................................................10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
521 F.3d 1351 (Fed. Cir. 2008) ......................................................................12

*Oceaneering Int'l, Inc. v. Trendsetter Eng'g, Inc.,*
No. 16-cv-2797, 2016 WL 7388390 (S.D. Tex. Dec. 20, 2016) ......................17

*PAR Pharm., Inc. v. TWI Pharms., Inc.*,
  773 F.3d 1186 (Fed. Cir. 2014) ...........................................................................19

*Summit Tech., Inc. v. Nidek Co., Ltd.*,
  363 F.3d 1219 (Fed. Cir. 2004) ...........................................................................13

*Symbol Techs., Inc. v. Opticon, Inc.*,
  935 F.2d 1569 (Fed. Cir. 1991) .............................................................................9

*Voter Verified, Inc. v. Premier Election Solutions, Inc.*,
  698 F.3d 1374 (Fed. Cir. 2012) .............................................................................6

*Wi-LAN Inc. v. Sharp Elec. Corp.*,
  362 F. Supp. 3d 226 (D. Del. Feb. 14, 2019) ....................................................22

*Woodland Trust v. Flowertree Nursery, Inc.*,
  148 F.3d 1368 (Fed. Cir. 1998) ...................................................................10, 20

*Zimmer Tech., Inc. v. Howmedica Osteonics Corp.*,
  476 F. Supp. 2d 1024 (N.D. Ind. 2007) .............................................................10

**Statutes**

35 U.S.C. § 102(b) ...................................................................................................6, 10

35 U.S.C. § 282(a) ........................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 56(a).....................................................................................................8

## I.      NATURE AND STATE OF PROCEEDINGS

Plaintiff Koki Holdings Co. Ltd. ("Koki") respectfully submits this opening brief in support of its motion for summary judgment that Defendant Kyocera Senco Industrial Tools, Inc. ("Kyocera") cannot meet its burden of proving by clear and convincing evidence that claims 1-4 of U.S. Patent No. 7,156,012 (Ex. A[1]; "'012 patent") and claims 1 and 10 of U.S. Patent No. 7,398,647 (Ex. B; "'647 patent") are invalid due to anticipation or obviousness.

In its opening expert report on invalidity, Kyocera disclosed for the first time that it was relying on a physical SN325+ model nail gun as prior art, notwithstanding that the physical sample had been in its possession since at least 2017. (*See* Ex. G at 7 (admitting that Kyocera "located the physical sample in the archives and conducted various tests and measurements between 2017 and 2020").) On March 30, 2020, Judge Burke denied Koki's Motion to Strike Kyocera's reliance on the physical SN325+ model, but permitted supplemental discovery on the newly disclosed art. (D.I. 122.) The parties met and conferred and agreed that any claim construction disputes arising out of this new prior art would be briefed as part of summary judgment. (Ex. P at 4.)

---

[1]      "Ex. __" refers to the exhibits to Declaration of Michael J. Flynn attached to Plaintiff's Concise Statement of Facts. "SF. __" refers to the Concise Statement of Facts.

Expert discovery is now closed. Trial is scheduled to begin on November 2, 2020. (D.I. 14.)

## II.   STATEMENT OF FACTS

Koki is a leading innovator and manufacturer of power tools and outdoor power equipment, including power drills, circular saws, reciprocating saws, and fastener driving tools, such as nail guns, which is the technology at issue in this case. Examples of nail guns developed by Koki are illustrated below:




A fastener driving tool is used to drive nails, staples, or other linearly driven fasteners into wood, metal, or other types of material. Fastener driving tools are used in many types of construction-related applications, ranging from heavy-duty and high-volume applications to smaller jobs and precision work. Some examples of powered nailers include: (i) framing nailers that handle large projects such as framing houses and building decks; (ii) finishing nailers used for assembling furniture and installing cabinets; (iii) brad nailers used for securing crown molding

or baseboards; and, (iv) roofing nailers for applying roof shingles. (*See* Ex. C at ¶ 48.)[2]

A.    **U.S. Patent Nos. 7,156,012 and 7,398,647**

The '012 and '647 patents are related and share a common specification.[3] These patents are generally directed to a fastener driving tool that optimizes the ratio between the cross-sectional area of the main valve control channel and the volume of the main valve chamber. The optimization allows the tool to achieve rapid firing and reduce the amount of compressed air consumed by the tool. (*See* Ex. C (Vallee Op. Exp. Rpt.) at ¶¶ 60-64.)

In the '012 and '647 patents, the main valve chamber is located above the piston and is designed to direct compressed air against the piston during operation of the tool. (Ex. A at FIGS. 1, 3, col. 9:37-42, 9:63-10:2.) The main valve control channel is a channel between the main valve chamber and the trigger valve. (*Id*. at col. 7:38-40.) When the trigger is pulled, the main valve control channel supplies compressed air from the trigger valve to the main valve chamber in order to drive the piston. (*Id*. at col. 10:32-40, 13:26-30.)

---

[2]    This background is provided for context and not material to deciding the motion for summary judgment, except where specific citations to the Statement of Facts are provided.

[3]    The '647 patent is a continuation of the '012 patent and shares a common specification. (SF. 1.) For simplicity, citations to the specification are made to the specification of the earlier-issued '012 patent.

FIG. 1 of the '012 and '647 patents shows a cross-sectional view of one example of the nail gun and FIG. 3 shows a partial cross-sectional view of the main valve chamber (8) and the main valve control channel (40). The main valve control channel (40) provides fluid communication between the main valve chamber (40) and trigger valve (6). (Ex. A at col. 7:38-43.) The main valve chamber is highlighted in green, the main valve control channel is highlighted in blue, and the trigger valve is highlighted in orange.



(*See* Ex. C at ¶ 61.)

The ratio of the internal volume of the main valve chamber (green) to the cross-sectional area of the main valve control channel (blue) is defined as being lower than a specified ratio. (*Id.* at ¶ 62) Specifically, claim 1 of the '012 patent

recites that the "ratio obtained from dividing the maximum internal volume of the main valve chamber measured in $m^3$ by the cross-sectional area of the main valve control channel measured in $m^2$ being not more than 1.0" (the "'012 Ratio Limitation"). (*See* SF. 3; Ex. A at col. 30:21-29.) Claims 1 and 10 of the '647 patent specify that the "ratio obtained from dividing a maximum internal volume of the main valve chamber measured in $m^3$ by a cross sectional area of the first channel measured in $m^2$ is no greater than 0.8" (the "'647 Ratio Limitation"). (SF. 4; Ex. B at col. 29:52-55, 32:28-32.)[4]

The inventions of the '012 and '647 patents offer significant benefits to the operator. The inventions result in a fast acting trigger which improves nailing performance, allow for faster operation of the tool, and improve responsiveness of the tool to the user. (*See* Ex. C at ¶ 64.) The inventions also reduce air consumption, which in turn reduces compressor wear and lowers the amount of electricity or fuel required to operate the compressor, thereby providing operational cost savings to the operator. (*Id*.) Koki has sold several products that implement the claimed inventions, and these products have received praise for their improved response time and air consumption efficiencies. Koki has recognized over

---

[4]    The '012 and '647 Ratio Limitations have slightly different terminology. The '012 patent recites a "main valve control channel" and the '647 patent recites a "first channel."  For the purposes of this case, the "main valve control channel" and "first channel" are equivalent and used interchangeably herein. (*See* SF. 5; Ex. O (Miller Dep. Tr.) at 117:20-24 (agreeing "main valve control channel" is same as "first channel"); Ex. F at ¶ 433.)

$260,000,000 in sales of these products. (Ex. D (Vallee Reb. Exp. Rpt.) at ¶¶ 278-287, 312-315.)

## B.    Kyocera Infringement and Invalidity Contentions

Kyocera does not dispute infringement of the asserted claims of the '647 and '012 patents. (SF. 6; Ex. E at ¶ 78.)  The only challenges that Kyocera raises is its assertion that (i) claim 1 of the '647 patent is anticipated by the SN325+ model; (ii) claim 1 of the '012 patent is anticipated by the SN325+ model; and (iii) claims 1 and 10 of the '647 patent and claims 1-4 of the '012 patent are obvious based on U.S. Patent App. Pub. No. 2001/0009260 to Ishizawa et al. ("Ishizawa") in view of the SN325+ model. (SF. 7-9.)

Kyocera relies on a physical sample of the SN325+ as prior art. (SF. 10.) The SN325+ model that Kyocera relies on as prior art includes the serial number "94903803." (SF. 11) Kyocera asserts that the first two numbers ("94") identify the production year and the third number ("9") identifies the production month. (Ex. G at 5.) Thus, Kyocera contends that the SN325+ model was "publicly available" in September 1994, which is more than one year before the priority date of the '647 and '012 patents.[5] (*Id*.) The SN325+ model that Kyocera relies on as prior art is

---

[5]    The '012 and '647 patents claim priority to Japanese Patent Application No. P2004-011835 filed on January 20, 2004. Under 35 U.S.C. § 102(b), the critical date is one year before the earliest date to which a patent may claim priority. *Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1380 (Fed. Cir. 2012); *see also* 35 U.S.C. § 102(b). For purposes of this Motion, the critical date

non-functional and cannot be operated. (SF. 12; Ex. H (Vallee Supp. Reply Rpt.) at ¶¶ 11-12.)

Kyocera concedes that Ishizawa does not disclose the '012 and '647 Ratio Limitations, but asserts that the SN325+ model discloses the '012 and '647 Ratio Limitations. (SF. 13; Ex. F (Miller Initial Rpt.) at ¶¶ 387, 409, 434.) Specifically, Kyocera alleges that the SN325+ model meets the "cross sectional area of the [first channel/main valve control channel]" aspect of the '012 and '647 Ratio Limitations by combining the cross sectional area of the SN325+'s four separate crossover holes into one cross section area. (SF. 14.)  It is uncontested that the cross sectional area of any one of the SN325+'s four crossover holes is insufficient to meet the '012 and '647 Ratio Limitations.  (SF. 21.)

## III.   SUMMARY OF ARGUMENT

Kyocera cannot prove that the asserted claims of the '012 and '647 patents are anticipated and/or obvious in view of the SN325+ model.

First, under the proper construction of the term "cross sectional area of the [first channel/main valve control channel]", there is no genuine dispute that the SN325+ model does not meet the '012 and '647 Ratio Limitations, which require that the ratio obtained by dividing the volume of the main valve chamber in $m^3$ by the cross-sectional area of the first channel/main valve control channel be less than

for the '012 and '647 patents is January 20, 2003, or one year before the January 20, 2004 claimed priority date for the '012 and '647 patents. (SF. at 2.)

0.8 or 1.0. Because Kyocera's expert himself calculates the ratio of the volume of the main valve chamber divided by the cross-sectional area of a single channel to be more than 1.0,  the SN325+ model does not meet the '012 and '647 Ratio Limitations.

Second, Kyocera has offered no record evidence demonstrating that the SN325+ model was in public use before the critical date. Kyocera admits that the specific SN325+ model on which it relies is a production archive that has never been used in public. (SF. at 25; Ex. G. at 7.) Kyocera has also failed to offer any admissible documents or witnesses with contemporaneous knowledge of the alleged public availability of the SN325+ model and Kyocera admits that none of its witnesses has any firsthand knowledge of any offer for sale and/or public use of the SN325+. Therefore, Kyocera cannot meet its burden to establish that the SN325+ model is prior art.

## IV.   LEGAL STANDARDS

### A.   <u>Summary Judgment</u>

Summary judgment is warranted when, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Federal Circuit "has repeatedly emphasized

that 'summary judgment is as appropriate in a patent case as in any other.'" *Avia Grp. Int'l, Inc. v. L.A. Gear, Cal. Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008).

To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must produce probative evidence sufficient to demonstrate a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 247-49; *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018).

**B.    Anticipation**

An issued United States patent is presumed valid. *See* 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship,* 564 U.S. 91, 101 (2011). The burden of proving invalidity is on the patent challenger, by clear and convincing evidence. *Microsoft,* 564 U.S. at 101-07. The clear and convincing evidence standard is "a heavy and unshifting burden" that the patent challenger must meet. *Symbol Techs., Inc. v. Opticon, Inc.,* 935 F.2d 1569, 1580 (Fed. Cir. 1991).

"Anticipation requires clear and convincing proof that a single prior art reference 'not only disclose[s] all of the elements of the claim within the four comers of the document, but ... also disclose[s] those elements arranged as in the

claim.'" *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.,* 725 F.3d 1341, 1351 (Fed. Cir. 2013) (quoting *Net MoneyIN v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008)) (modifications in original). "When the asserted basis of invalidity is a public use or on-sale bar, the court should determine whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention." *Dana Corp. v. American Axle & Mfg., Inc.*, 279 F.3d 1372, 1375 (Fed. Cir. 2002) (internal quotations omitted). When a party relies on a physical product, it bears the burden of proving that the product qualifies as "prior art" under 35 U.S.C. §§ 102(a) and (b). *See e.g., Zimmer Tech., Inc. v. Howmedica Osteonics Corp.,* 476 F. Supp. 2d 1024, 1045 (N.D. Ind. 2007) (granting summary judgment that physical product did not qualify as prior art under 35 U.S.C. § 102(b)).

Kyocera also must prove that any alleged prior art was actually "in public use or on sale in this country" before the January 2003 critical date—one year before the filing of the priority patent application. *See* 35 U.S.C. § 102(b); *Invitrogen Corp. v. Biocrest Mfg.*, 424 F.3d 1374, 1378-79 (Fed. Cir. 2005); *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1307 (Fed. Cir. 2002) ("Although 'public use' for purposes of § 102(b) is defined differently from 'use' for purposes of § 102(a), both require actual use by someone at some point"); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998)

("[In] order to invalidate a patent based on prior knowledge or use, that . . . knowledge or use must have been available to the public."); *Bennett Regulator Guards, Inc. v. Canadian Meter Co.*, 184 F. App'x 977, 980 (Fed. Cir. 2006) (reversing summary judgment of invalidity because "under either § 102(a) or § 102(b), the prior use must be a public use").

### C.   **Obviousness**

A patent is obvious if "the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time of invention to a person having ordinary skill in the art." 35 U.S.C. § 103. A "patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). An accused infringer "has the burden to show, by clear and convincing evidence, that a person of ordinary skill in the relevant field had a reason to combine the elements in the manner claimed." *IGT v. Bally Gaming Int'l, Inc.*, 610 F. Supp. 2d 288, 314 (D. Del. 2009), *aff'd*, 659 F.3d 1109 (Fed. Cir. 2011). "In determining whether there would have been a motivation to combine prior art references to arrive at the claimed invention, it is insufficient to simply conclude the combination would have been obvious without identifying any reason why a person of skill in the art

11

would have made the combination." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1366 (Fed. Cir. 2017).

## V.    ARGUMENT

### A.    The Asserted Prior Art Does Not Meet the '012 and '647 Ratio Limitations

#### 1.    The '012 and '647 Ratio Limitations Require the Cross-Sectional Area of the First Channel/Main Valve Control Channel be the Cross-Sectional Area of a Single Channel

As noted in the Nature and Stage of Proceedings, Judge Burke permitted Kyocera to add the SN325+ model as new prior art after the close of fact discovery. (*See* D.I. 122.) The parties' dispute as to the meaning of "cross-sectional area of the [first channel/main valve control channel]" results from Kyocera's application of this limitation to the added prior art, which only became apparent during expert discovery. Koki believes the plain meaning of the term "cross-sectional area of the [first channel/main valve control channel]" means the cross-sectional area of a *single* channel. On the other hand, Kyocera asserts that the limitation can be satisfied by the combined cross-sectional area of *multiple separate channels*. Given this fundamental dispute, Koki requests the Court address the scope of this term. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.)

The asserted claims of the '647 and '012 patents require that the claimed ratio is obtained by dividing the maximum internal volume of the main valve chamber by the cross-sectional area of the first channel/main valve control channel. (*See* SF. 3-4; Ex. A at col. 30:21-29; Ex. B at col. 29:52-55, 32:28-32.) The intrinsic evidence demonstrates that the meaning of the term "cross-sectional area of the [first channel/main valve control channel]" means the cross-sectional area of a *single* channel, and not the combined cross-sectional area of *multiple separate channels*, as asserted by Kyocera.

The plain language of the asserted claims use singular, and not plural, language stating that the ratio is determined from the cross-sectional area of the "first *channel*" or the "main valve control *channel*." Nothing in the language of the claim indicates that the claimed cross-sectional area can be calculated by adding together the cross-sectional areas of multiple separate channels. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1342 (Fed. Cir. 2016) (reversing summary judgment of anticipation where claim required the step of configuring memory "according to a logical table," finding that the district court erred in construing the claim too broadly to permit the configuring to be done from two tables); *Summit Tech., Inc. v. Nidek Co., Ltd.*, 363 F.3d 1219, 1228 (Fed. Cir. 2004) (finding claim reciting "a light spot" having a maximum area equal to the area of the cornea to be treated required the use of a single light spot and a product using a series of laser

pulses did not meet the claim limitation); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1105–06 (Fed. Cir. 1996) (finding claim recitation of "a cup" and "the cup" was limited to a single cup); *see also CANVS Corp. v. Nivisys, LLC*, No. 2:14-CV-99-FTM-38MRM, 2015 WL 6560621, at *2-*3 (M.D. Fla. Oct. 29, 2015) (holding "a line of sight" is "a single line of sight" because the specification discuss a singular description, which is also reflected by the singular claim language).

The specification of the '012 and '647 patents also makes clear that the "first channel" or "main valve control channel" is a single channel. As noted above, the inventions of the '012 and '647 patent achieve rapid firing while reducing the consumption of compressed air by optimizing the ratio between the effective cross-sectional area of the main valve control channel (blue) and the volume of the main valve chamber (green). (*See e.g.*, SF. 15; Ex. A at col. 3:21-24, 14:40-15:57, 20:7-21:18, 29:39-62, FIG. 10).

14



The specification explains that the main valve control channel (blue) is a single cylindrical tube having a cross sectional area (S1) that connects the main valve chamber (green) with the trigger valve (orange):

> The trigger valve 6 is fluidly connected to *a main valve control channel 40, which is a cylindrical tube* extending from a main valve chamber 8 described later. Specifically, the main valve control channel 40 is fluidly connected to a space between the outer valve bush 10 and inner valve bush 11, and opens into the trigger valve 6. *This main valve control channel 40 is configured such that its cross-sectional area S1 is $3.2 \times 10^{-5}$ ($m^2$).*

(SF. 16; Ex. A at col. 7:38-45, 16:42-46 (emphasis added)). Nowhere does the specification suggest that multiple channels can be combined to form a "main valve control channel" or that the cross-sectional area of multiple channels (S1, S2, S3, etc.) can be added together to be the cross-sectional area of a "main valve

15

control channel." To the contrary, every embodiment in the specification shows a single channel between the trigger valve and the main valve chamber and the cross-sectional area is calculated for that single channel. (SF. 18; Ex. O (Miller Dep. Tr.) at 112:5-9 ("Q: There's nothing in the specification of the '647 or '012 Patent that says that the main valve control channel is made up of multiple channels, is there? A: No, not to my knowledge, no.").)

The specification continues, explaining that the ratio is determined by dividing the maximum volume of the main valve chamber (V1) by the cross sectional area of the single main valve control channel (S1):

> The main valve chamber 8 has an internal volume variable in accordance with the vertical movement of the main valve 19, but has a maximum volume V1 of $2.56 \times 10^{-5}$ (m³). *As a result, the value obtained from dividing the volume V1 of the main valve chamber 8 by the cross-sectional area S1 of the main valve control channel 40 is V1/S1=0.8≦1.0.* Likewise, the value obtained from dividing the volume V1 of the main valve chamber 8 by the cross-sectional area Sm of the main valve intake channel 20 is V1/Sm=0.8≦1.0. In addition, the main valve control channel 40 has a curving portion as shown at the location enclosed by a circle in FIG. 3. The curving portion is formed into a gentle arc shape.

(SF. 17; Ex. A at col. 9:51-62; *see also id*. at col. 12:27-42, 17:20-31, 18:41-53, 20:34-50.) Again, nowhere does the specification indicate that the ratio is obtained from dividing the volume of the main valve chamber (V1) by the cross sectional area of multiple channels (S1, S2, S3, etc.) that are then added together. Instead, the ratio is determined by dividing the volume of the main valve chamber (V1) by

the cross-sectional area of a single channel (S1). (*Id.*) As Kyocera's expert, Mr. Miller, admits, each embodiment in the specification shows that the ratio is determined by dividing the volume of single main valve chamber by the cross sectional area of a single channel. (SF. 18; Ex. O (Miller Dep. Tr.) at 112:5-9.) This further confirms that the main valve control channel is a single channel. *See Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023–24 (Fed. Cir. 1997), *opinion amended on reh'g,* 131 F.3d 1009 (Fed. Cir. 1997) (finding the term "a metallic gas confining chamber" was limited to a single chamber in view of the patent specification); *see also CANVS*, 2015 WL 6560621, at *2-*3 (M.D. Fla. Oct. 29, 2015); *Oceaneering Int'l, Inc. v. Trendsetter Eng'g, Inc.*, No. 16-cv-2797, 2016 WL 7388390, at *4-*6 (S.D. Tex. Dec. 20, 2016) (construing "flow path" to mean "a single large passage for fluid flow").

Accordingly, the proper interpretation of the '012 and '647 Ratio Limitations requires that the "cross-sectional area of the [first channel/main valve control channel]" be the cross-sectional area of a single channel, and not the combined cross-sectional area of multiple separate channels.

### 2.    Kyocera Cannot Prove That the SN325+ Model Anticipates Claim 1 of the '647 Patent and Claim 1 of the '012 Patent

Under the proper construction of "cross sectional area of the [first channel/main valve control channel]", there is no genuine dispute that the SN325+ model does not meet the '012 and '647 Ratio Limitations. Kyocera's expert, Mr.

17

Miller, measured the volume of the SN325+ model's main valve chamber to be $1.771 \times 10^{-5}$ $m^3$ and calculated the cross-sectional area of a single crossover hole to be $7.665 \times 10^{-6}$ $m^2$. (SF. 19-20.) Under Mr. Miller's findings, the ratio obtained from dividing the volume of the main valve chamber ($1.771 \times 10^{-5}$ $m^3$) by the cross-sectional area of a single channel ($7.665 \times 10^{-6}$ $m^2$) is 2.31, and therefore the SN325+ model does not meet the '012 and '647 Ratio Limitations which require ratios less than 1.0 and 0.8, respectively. (SF. 21.)[6]

Accordingly, under the proper claim interpretation, Kyocera admittedly cannot prove that the SN325+ model satisfies the '012 and '647 Ratio Limitations. Summary judgment should therefore be granted of no anticipation based on the SN325+ model.

### 3. Kyocera Cannot Prove That the SN325+ Model Renders Obvious Claims 1 and 10 of the '647 Patent and Claims 1-4 of the '012 Patent

Under the proper construction of "cross sectional area of the [first channel/main valve control channel]," Kyocera cannot prove that Ishizawa in view of the SN325+ model renders the asserted claims of the '012 and '647 patent obvious. Kyocera concedes that Ishizawa does not explicitly disclose the dimensions of the main valve control channel/first channel or main valve chamber, but asserts that it would have been obvious to a person of ordinary skill in the art to

---

[6]  Koki's expert, Dr. Vallee arrived at a ratio of 2.18, which is also more than the ratio recited in the Ratio Limitation. (SF. 22-24.)

utilize the ratio from the SN325+ model with the tool described in Ishizawa. But as noted above, the SN325+ model does not satisfy the '012 and '647 Ratio Limitations (*see supra* at Section V.A.2), and absent the SN325+ model, Kyocera provides no reason why one of ordinary skill in the art would modify Ishizawa to use the claimed ratio. As a result, there is no genuine dispute that the asserted claims are not obvious. *See PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1194 (Fed. Cir. 2014) (motivation to combine and reasonable expectation of success may be found only "if all the elements of an invention are found in a combination of prior art references") (citing *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1164 (Fed. Cir. 2006))[7]

## B. <u>Kyocera Cannot Prove That the SN325+ Model Qualifies as Prior Art Under 35 U.S.C. § 102</u>

Kyocera also cannot meet its burden to prove, by clear and convincing evidence, that the SN325+ model qualifies as prior art.

Kyocera has produced no evidence whatsoever, let alone clear and convincing evidence, that would allow a jury to conclude that the SN325+ model on which it relies as prior art was publicly available before January 20, 2003.

---

[7]   Koki also disputes that other claim limitations are taught, disclosed, or suggested by Ishizawa or the SN325+ Nailer. Koki further disputes that a person of ordinary skill in the art would have modified Ishizawa with aspects of the SN325+ for any of the reasons articulated in *KSR*, 550 U.S. 398. However, these issues are not relevant to the basis on which Koki moves for summary judgment of no invalidity, which is that the prior art as a whole does not disclose the '012 and '647 Ratio Limitations.

Kyocera relies solely on the serial number engraved on the particular SN325+ model considered by its expert to conclude that the model was "publicly available" in 1994. (SF. 11; Ex. G at 5.) But Kyocera's own admissions demonstrate the opposite. Kyocera admits that this "particular physical sample was retained in the Kyocera Senco Engineering Lab as a production archive sample since it was manufactured." (SF. 25; Ex. G at 7.) Such secret use does not meet public use requirements under § 102. *See Woodland*, 148 F.3d at 1368, 1371 ("[W]hen an asserted prior use is not that of the applicant, § 102(b) is not a bar when that prior use or knowledge is not available to the public.").

Kyocera also has offered no witness with contemporaneous knowledge of the alleged public availability of the SN325+ model and admits that none of its witnesses has any firsthand knowledge of any offer for sale and/or public use of the SN325+. (SF. 26; Ex. G at 3.)

Kyocera also has produced no documents proving that the SN325+ model was publicly available before the critical date. Kyocera relies only on the following documents: (i) a brochure with a copyright date of 1993 that includes a picture of a tool labeled "SN325+" (Ex. I); (ii) a SN325+ parts reference guide with a copyright date of 1990 and a collection of "replacement parts charts" with copyright dates between 1990 and 1993 (Ex. J); (iii) an operating manual with a copyright date of 1997 (Ex. K); (iv) service notes with dates between 1989 and

1998 (Ex. L); and, (v) a product announcement with the footer "Rural Builder / July / 1991" (Ex. M). (*See* Ex. G at 6.).

None the documents on which Kyocera relies prove that the SN325+ model was publicly available before the critical date. First, Kyocera has offered no proof that any of those documents were actually publicly available. *See Hilgraeve, Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964, 975 (E.D. Mich. 2003) ("A date imprinted on a document, without more, does not prove by clear and convincing evidence that [the alleged prior art] was known or used by others in this country prior to [the critical date]"). In fact, Kyocera designated many of the documents as Highly Confidential, thus representing that these documents were never publicly available. (*See e.g.* Ex. L.) Second, nothing in these documents proves that ***the particular SN325+ model*** on which Kyocera relies was ever publicly available as of the critical date. Finally, Kyocera offers no evidence linking the physical SN325+ model on which it relies to these written documents. This is important because Kyocera admits that there have been significant changes to the SN325+ design over the years. (SF 28.) Indeed, Kyocera's corporate witness testified that he understands that Kyocera has been selling a tool branded as the "SN325+" since the 1980s, but admitted that there have been significant changes to the tool over the years it has been sold. (SF. 27-28). And again, because none of Kyocera's witnesses have any firsthand knowledge of the SN325+ model (SF. 26), no witness

can definitively confirm whether the documents accurately reflect the SN325+ model sold prior to the critical date or that no changes have been made to the tool since it purportedly was manufactured in 1994.

In addition, the documents Kyocera relies on, including assertions regarding their publication dates, are inadmissible hearsay that cannot defeat summary judgment. *James Julian, Inc. v. Raytheon Co.*, 557 F. Supp. 1058, 1063 fn. 10 (D. Del. 1983) ("a court may consider only evidence admissible under the Federal Rules of Evidence in its disposition of a summary judgment motion"); *Hilgraeve*, 271 F. Supp. 2d at 974-975 (dates printed on user's manual of alleged prior art software were hearsay statements when offered to prove the date of the references); *Insight Tech., Inc. v. SureFire, LLC*, No. 04-cv-74-JD, 2007 WL 3244092, *6 (D.N.H. 2007) ("Dates on letters or other documents, when offered to prove the truth of the date, are inadmissible hearsay unless an exception applies or the date can be proven by other means."). Thus, the documents are inadmissible for purposes of establishing public availability or prior public use.[8]

Because Kyocera cannot prove the specific SN325+ model was in public use before the critical date, Kyocera cannot show that the SN325+ is prior art under 35

---

[8]      The business record exception under Fed. R. Evid. 803(6) does not apply as no one at Kyocera has any firsthand knowledge of the public availability of the SN325+ (SF. 26) and therefore cannot establish any of the documents were "made at or near the time by . .. someone with knowledge." *See Wi-LAN Inc. v. Sharp Elec. Corp.*, 362 F. Supp. 3d 226, 231-32 (D. Del. Feb. 14, 2019).

U.S.C. § 102. Therefore, summary judgment should be granted that Kyocera cannot prove that the SN325+ model is prior art.

## VI.   CONCLUSION

For the foregoing reasons, Koki respectfully requests that the Court enter summary judgment that Kyocera has not proven that the asserted claims of the '012 and '647 patents are invalid as anticipated or obvious.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiff*
*Koki Holdings Co., Ltd.*

OF COUNSEL:

Paul Devinsky
Stephen J. Smith
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC  20001
(202) 756-8000

Amol A. Parikh
Thomas DaMario
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL  60606
(312) 372-2000

Hitoshi Akiba
KILPATRICK TOWNSEND
& STOCKTON LLP
The Imperial Tower, 15th Floor
1-1-1 Uchisaiwaicho,
Chiyoda-ku, Tokyo,
Japan 100
+81.3.350.756.09

June 19, 2020

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION

The foregoing complies with the type-volume limitations of paragraph 12(b) of the Scheduling Order (D.I. 14). The text of this brief, including footnotes, was prepared in Times New Roman 14-point. According to the word processing system used to prepare it, the brief contains 5,336 words, excluding the case caption, tables, and signature block.

Dated: June 19, 2020                    */s/ Michael J. Flynn*
                                        Michael J. Flynn (#5333)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 19, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 19, 2020, upon the following in the manner indicated:

Kelly E. Farnan, Esquire                     *VIA ELECTRONIC MAIL*
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendant Kyocera Senco*
*Industrial Tools, Inc.*

Robert S. Rigg, Esquire                     *VIA ELECTRONIC MAIL*
David Bernard, Esquire
John K. Burke, Esquire
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL  60601
*Attorneys for Defendant Kyocera Senco*
*Industrial Tools, Inc.*

*/s/ Michael J. Flynn*

Michael J. Flynn (#5333)