# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KOKI HOLDINGS CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 18-313 (CFC) |
| | ) | |
| v. | ) | |
| | ) | |
| KYOCERA SENCO INDUSTRIAL TOOLS, INC., | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,156,012

OF COUNSEL:

Robert S. Rigg
David Bernard
John K. Burke
Vedder Price P.C.
222 North LaSalle Street
Chicago, IL  60601
(312) 609-7500

Dated:  June 19, 2020

Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
farnan@rlf.com

*Attorneys for Defendant Kyocera Senco Industrial Tools, Inc.*

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................1

II. NATURE AND STAGE OF THE PROCEEDINGS.................................1

III. SUMMARY OF ARGUMENT....................................................................2

IV. STATEMENT OF FACTS REGARDING THE ASSERTED '012 PATENT .........................................................................................................2

    A. The Asserted Claims Require a Fluid Connection Between a Frame and a Channel........................................................................2

    B. The Specification Does Not Define or Otherwise Explain How a Channel can be Fluidly Connected to a Frame .....................................4

V. LEGAL STANDARDS OF INDEFINITENESS .......................................6

VI. THE CLAIM ELEMENT "A TRIGGER VALVE EXTERIOR FRAME TO WHICH THE MAIN VALVE CONTROL CHANNEL IS FLUIDLY CONNECTED" IS INDEFINITE...................6

    A. The Phrase "A Trigger Valve Exterior Frame to Which the Main Valve Control Channel is Fluidly Connected" is Facially Nonsensical .........................................................................................7

    B. The Specification Fails to Clarify the Facially Non-Sensical "Fluidly Connected" Phrase ................................................................8

    C. Koki's Attempt to Redraft the Claims Should Be Rejected ................9

VII. CONCLUSION ............................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
   358 F.3d 1371 (Fed. Cir. 2004) ....................................................................9, 12

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ............................................................................................6

**Statutes**

35 U.S.C. § 112, ¶ 2 ..................................................................................................6

## TABLE OF EXHIBITS

| Exhibit[1] | Description of Document | Abbreviation |
|---|---|---|
| 3 | U.S. Patent No. 7,156,012, bearing bates numbers KHD000001-34 | '012 Patent |
| 5 | Excerpts from Initial Expert Report of Keven Miller Regarding Invalidity, dated February 28, 2020 | Miller Initial |
| 7 | Excerpts from Reply Expert Report of Keven Miller Regarding Invalidity, dated April 24, 2020 | Miller Reply |
| 10 | Excerpts from Rebuttal Expert Report of Glenn Vallee, Ph.D., dated March 27, 2020 | Vallee Rebuttal |
| 12 | Transcript Excerpts from Deposition of Glenn Vallee, Ph.D., taken June 3, 2020 | Vallee Tr. |
| 13 | Transcript Excerpts from Markman Hearing, dated October 2, 2019 | Markman Tr. |

---

[1] As used herein, exhibits attached to the Rigg Declaration will be referred to by corresponding "Ex. __."

## I.  INTRODUCTION

Claims 2-4 of U.S. Patent No. 7,156,012 (the "'012 Patent") are invalid as indefinite because they require the impossible: a hollow space *fluidly* connected to a solid wall. Anyone, let alone one skilled in the art of the '012 Patent, knows that a space cannot be fluidly connected to a solid. Rather, a space can be fluidly connected to another space, and a solid can be physically connected to another solid. Because the claims require a physically impossible connection, they are indefinite.

Rather than recognizing the indefinite nature of these claims, Koki urges the Court to *reconstrue* the asserted claims to maintain their validity. But Federal Circuit precedent requires that claims be read as drafted, even if the result is nonsensical, and not as the patentee wishes it had drafted the claims.

## II.  NATURE AND STAGE OF THE PROCEEDINGS

On February 23, 2018, Plaintiff Koki filed a Complaint alleging that Defendant infringes claims 1-4 of the '012 Patent. (D.I. 1, ¶29). On October 2, 2019 the Court held a hearing on claim construction during which the Court considered whether to make a determination on the validity of the claim term "a trigger valve exterior frame to which the main valve control channel is *fluidly* connected" as found in claims 2-4 of the '012 Patent. (Ex. 13, Markman Tr., 46:10-50:11). The Court, while "skeptical" of the validity of this claim term at that stage of the case (*see id*.,

46:23-25), decided that this determination would be better made at the summary judgment stage. (*Id.*, 75:14-19).

## III. SUMMARY OF ARGUMENT

Asserted claims 2-4 of the '012 Patent are indefinite because one of ordinary skill cannot determine the scope of the claims with reasonable certainty. The limitation "a trigger valve exterior frame to which the main valve control channel is *fluidly* connected" is indefinite because a channel logically cannot be *fluidly* connected to an exterior frame. Koki seeks to redraft the claims by explaining what Koki meant to claim to save their validity, but the Court must construe the claims as drafted, and may not redraft the claims even if the result is nonsensical. Accordingly, claims 2-4 of the '012 Patent are indefinite.

## IV. STATEMENT OF FACTS REGARDING THE ASSERTED '012 PATENT

### A. The Asserted Claims Require a Fluid Connection Between a Frame and a Channel

The '012 Patent and the asserted claims focus on a pneumatic fastener driving tool, which uses compressed air supplied to drive fasteners. (Ex. 3, '012 Patent, 1:6-18). Relevant here, asserted claim 2 is reproduced below.

> The fastener driving tool as claimed in claim 1, further comprising:
>     a push lever in pressure contact with a workpiece; and
>     a trigger functioning as an operation input member; and
>     wherein the main valve is reciprocally movably provided in the
> main valve chamber for alternately providing a fluid communication

between the piston upper chamber and the accumulator and between the piston upper chamber and the atmosphere; and
wherein the trigger valve comprises:
***a trigger valve exterior frame to which the main valve control channel is fluidly connected***;
a valve piston reciprocally slidably disposed within the trigger valve exterior frame and having one end exposed to the accumulator and another end, the valve piston being movable between a top dead center and a bottom dead center, ***a main valve intake channel being defined between the valve piston and the trigger valve exterior frame*** for providing fluid connection between the accumulator and the main valve control channel when the valve piston is moved to the upper dead center, and ***an air discharge channel being defined between the valve piston and the trigger valve exterior frame*** for providing fluid connection between the main valve control channel and the atmosphere when the valve piston is moved to the bottom dead center, a main valve intake channel and the air discharge channel being alternately opened; and
a plunger movable in an axial direction thereof between its top dead center and its bottom dead center and extending through the valve piston and the trigger valve exterior frame, ***a trigger valve chamber being defined by the trigger valve exterior frame***, the another end of the valve piston and the plunger, the air discharge channel having a cross-sectional area not less than the cross-sectional area of the main valve control channel. (*Id.*, 30:30-65).

Asserted claims 3-4 each depend from claim 2. (*Id.*, 30:66-31:18).[2] Of relevant note, asserted claim 2, and thus by extension asserted claims 3 and 4, requires "a trigger valve exterior frame to which the main valve control channel is *fluidly* connected." The claimed "trigger valve exterior frame" houses multiple

---

[2] All emphasis is added herein unless otherwise noted.

different fluid channels and chambers: (1) "a main valve intake channel"; (2) "an air discharge channel"; and (3) "a trigger valve chamber." (*Id.*, 30:46-62).

> **B.     The Specification Does Not Define or Otherwise Explain How a Channel can be Fluidly Connected to a Frame**

The specification of the '012 Patent provides a description of the "main valve control channel" and the "trigger valve exterior frame" as well as the multiple channels and chambers housed within the "trigger valve exterior frame." (*See, e.g.*, '012 Patent, 7:52-8:37; Ex. 5, Miller Opening, ¶480). The figure below shows the main valve control channel 8 (highlighted in blue) along with the trigger valve exterior frame (highlighted in yellow) that houses, partially or fully, five distinct channels and chambers, labeled below. (*Id.*; *see also* Ex. 5, Miller Rebuttal, ¶480; Ex. 10, Vallee Rebuttal, ¶¶306-307 (highlighting "main valve control channel" and "trigger valve exterior frame" consistent with the below image)).



**'012 Patent, Figure 2 (Annotated)**

4

The specification explains that the "trigger valve exterior frame . . . constitutes an outer wall of the trigger valve" – i.e. the trigger valve exterior frame is a solid wall. (Ex. 3, '012 Patent, 7:26-27). The specification further explains that the "trigger valve 6 is fluidly connected to a main valve control channel 40" via "a space between" two components that make up the trigger valve exterior frame. (*Id.*, 7:38-43; Ex. 7, Miller Reply, ¶222; Ex. 10, Vallee Rebuttal, ¶306). Thus, as demonstrated in the image below, the specification describes two key connections: (1) a solid connection between the outer wall of the main valve control channel and the trigger valve exterior frame (as indicated by the red circles); and (2) a fluid connection between the space within the main valve control channel and a space within the trigger valve (as indicated by the red arrows). (Ex. 7, Miller Reply, ¶222; Ex. 10, Vallee Rebuttal, ¶¶305-307 (highlighting "main valve control channel" and "trigger valve exterior frame" consistent with the below image)).



**'012 Patent, Figure 2 (Annotated)**

Importantly, the specification provides no explanation as to how the main valve control channel can be "*fluidly* connected" to the trigger valve exterior frame as required by asserted claims 2-4. (Ex. 5, Miller Opening, ¶480).

## V. LEGAL STANDARDS OF INDEFINITENESS

The claims of a patent must "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. If any part of a claim fails to meet this requirement, it is invalid as indefinite under 35 U.S.C. § 112, ¶ 2. The Supreme Court recently clarified the standard under which to consider indefiniteness: "we read § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).

## VI. THE CLAIM ELEMENT "A TRIGGER VALVE EXTERIOR FRAME TO WHICH THE MAIN VALVE CONTROL CHANNEL IS FLUIDLY CONNECTED" IS INDEFINITE

The claims 2-4 are indefinite because they fail to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. The limitation "a trigger valve exterior frame to which the main valve control channel is *fluidly* connected" provides no reasonable certainty and is therefore indefinite. *Nautilus*, 572 U.S. at 910.

6

### A. The Phrase "A Trigger Valve Exterior Frame to Which the Main Valve Control Channel is Fluidly Connected" is Facially Nonsensical

On its face, the limitation "a trigger valve exterior frame to which the main valve control channel is *fluidly* connected" is indefinite because a channel cannot be *fluidly* connected to an exterior frame. (Ex. 5, Miller Opening, ¶478). Rather, a channel, or a hollow space, can be fluidly connected to an empty space *within* a frame, such as a channel or a chamber, but not to the frame (i.e. a solid wall) *itself*. (*Id.*). Koki's expert, Dr. Vallee, agrees that fluid cannot pass through the frame itself, and instead passes through an "opening" in the frame. (Ex. 12, Vallee Tr., 164:7-16).

Moreover, a closer look at the surrounding claim language makes the meaning of this phrase even more uncertain. The claimed "trigger valve exterior frame" houses multiple different fluid channels and chambers, and thus it is unclear exactly to what channels or chambers (if any) the claimed main valve control channel is fluidly connected. (Ex. 5, Miller Opening, ¶479). For example, claim 2 of the '012 Patent recites the following disposed within the trigger valve exterior frame: (1) "a main valve intake channel"; (2) "an air discharge channel"; and (3) "a trigger valve chamber." (Ex. 3, '012 Patent, 30:46-48, 51-53, 61-62). Thus, even if it was assumed that the claims were intended to be drafted as a main valve control channel fluidly connected to a chamber or channel within the trigger valve exterior frame,

7

the claims still fail to provide reasonable certainty as to which of these three channels and chambers the main valve control channel is fluidly connected. (Ex. 5, Miller Opening, ¶479).

### B. The Specification Fails to Clarify the Facially Non-Sensical "Fluidly Connected" Phrase

The specification fails to provide any clarity as to the scope of the "fluidly connected" phrase. In fact, similar to claims 2-4, the specification describes five distinct channels/chambers defined at least partially by the trigger valve exterior frame. *See supra* Section IV.B; *see also* '012 Patent, 7:52-8:37. Thus, even if it was assumed that the claims were intended to be drafted as a main valve control channel fluidly connected to a chamber or channel within the trigger valve exterior frame, the claims, when read in view of the specification, still fail to provide reasonable certainty as to which of these five channels/chambers the main valve control channel is fluidly connected. (Ex. 5, Miller Opening, ¶480).

Instead, consistent with the plain meaning of "fluidly connected," the specification describes two key connections between the trigger valve exterior frame and the main valve control channel: (1) a solid connection between the outer walls or frames that make up the components (as indicated by the red circles); and (2) a fluid connection between the spaces formed by the outer walls of the components (as indicated by the red arrows). *See id*.

8


**'012 Patent, Figure 2 (Annotated)**

The phrase "a trigger valve exterior frame to which the main valve control channel is *fluidly* connected" blends these two distinct types of connections together, thereby rendering claims 2-4 indefinite.

### C.   Koki's Attempt to Redraft the Claims Should Be Rejected

The Federal Circuit has "repeatedly and consistently . . . recognized that courts may not redraft claims, whether to make them operable or to sustain their validity." *See Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (citations omitted); *see also id.* ("Even a nonsensical result does not require the court to redraft the claims.") (internal quotations omitted). Indeed, even when it is clear that the patentee meant to draft the claims differently, courts "construe the claim as written, not as the patentees wish they had written it." *Id.*

9

Koki, through its expert Dr. Vallee, violate this principle by attempting to redraft the claims to correct the facially nonsensical "fluidly connected" phrase. Dr. Vallee attempts to divide this fluid connection into two separate and distinct connections: (1) a ***physical*** connection between the walls forming two channels/chambers; and (2) a ***fluid*** connection between the two channels/chambers formed by the walls. However, in doing so, Dr. Vallee essentially concedes that what is actually required by the claims – a ***fluid*** connection between a solid and an empty space – is nonsensical and thus indefinite.

With reference to the figure annotated by Dr. Vallee below, Dr. Vallee first split the claimed ***fluid*** connection between the trigger valve exterior frame (highlighted in green) and ***the main valve control channel*** (highlighted in blue) into a ***physical*** connection between the trigger valve exterior frame and ***the structure that forms*** the main valve control channel. (Ex. 10, Vallee Rebuttal, ¶305 ("[T]he main valve control channel must be connected to the frame to seal the channel and allow air to be directed through it in a controlled manner.")).



**Ex. 10, Vallee Rebuttal, ¶306**

Dr. Vallee next split the *same* claim requirement for a fluid connection between the main valve control channel (highlighted in blue) and *the trigger valve exterior frame* (highlighted in green) into a fluid connection between the main valve control channel and *the trigger valve housed within* the trigger valve exterior frame. (*Id.*, ¶306 ("The specification makes clear that the trigger valve exterior frame is connected to the main valve control channel so that fluid can pass between the trigger valve and the main valve control channel.")).

Thus, Dr. Vallee, to explain the meaning of "a trigger valve exterior frame to which the main valve control channel is fluidly connected," was forced to ignore the actual claim language and instead create two entirely new, unrecited connections.

11

*See Chef Am.*, 358 F.3d at 1374 ("[C]ourts may not redraft claims, whether to make them operable or to sustain their validity"). The claim language here, as in *Chef America*, is unambiguous and specifically requires a single nonsensical fluid connection between an open space and a wall.

## VII. CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion for summary judgment of invalidity as to claims 2-4 of the '012 Patent.

|  |  |
|---|---|
| | */s/ Kelly E. Farnan* |
| | Kelly E. Farnan (#4395) |
| OF COUNSEL: | Richards, Layton & Finger, P.A. |
| | One Rodney Square |
| Robert S. Rigg | 920 North King Street |
| David Bernard | Wilmington, DE 19801 |
| John K. Burke | 302-651-7700 |
| Vedder Price P.C. | farnan@rlf.com |
| 222 North LaSalle Street | |
| Chicago, Illinois 60601 | *Attorneys for Defendant Kyocera Senco* |
| 312-609-7500 | *Industrial Tools, Inc.* |

Dated: June 19, 2020

# **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

The foregoing DEFENDANT'S OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,156,012 complies with the type-volume limitations of Paragraph 12(b) of the Scheduling Order (D.I. 14). The text of this brief, including footnotes, was prepared in Times New Roman 14-point. According to the word processing system used to prepare it, this brief contains 2,340 words, excluding the case caption, tables, and signature block.  Defendant's three briefs for summary judgment are a combined 9,725 words, excluding the case captions, tables, and signature blocks.

Dated:  June 19, 2020

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com