## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KOKI HOLDINGS CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 18-313 (CFC) |
| | ) | |
| v. | ) | |
| | ) | |
| KYOCERA SENCO INDUSTRIAL | ) | |
| TOOLS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT THAT
## U.S. PATENT NOS. 7,156,012 AND 7,398,647 ARE NOT INVALID

OF COUNSEL:

Robert S. Rigg
David Bernard
John K. Burke
Vedder Price P.C.
222 North LaSalle Street
Chicago, IL  60601
(312) 609-7500

Dated:  July 10, 2020

Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendant Kyocera Senco*
*Industrial Tools, Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

TABLE OF EXHIBITS ....................................................................... iv

I.  INTRODUCTION AND STAGE OF PROCEEDINGS ................................... 1

II.  SUMMARY OF ARGUMENT ................................................................. 1

III.  STATEMENT OF FACTS ...................................................................... 3

  A.  U.S. Patent Nos. 7,156,012 and 7,398,647 ........................................ 3

    (i)  The Asserted Claims ................................................................. 3

    (ii)  The Specification .................................................................... 4

  B.  The Prior Art ........................................................................... 6

    (i)  Ishizawa ................................................................................ 6

    (ii)  The SN325+ Nailer ................................................................. 7

    (iii)  Defendant's Ishizawa/SN325+ Nailer Obviousness
        Combination ......................................................................... 11

IV.  LEGAL STANDARDS REGARDING THE ON SALE AND
    PUBLIC USE BARS UNDER 35 U.S.C. § 102(B) ................................... 14

V.  ARGUMENT ...................................................................................... 15

  A.  Genuine Disputes of Material Fact Exist Regardless of Whether
      "A . . . Channel" is Limited to "A . . . Single Channel" as Koki
      Urges .................................................................................... 15

    (i)  Koki Has Failed to Set Forth Any Evidence That
        Necessitates Construing "A . . . Channel" as "A . . .
        Single Channel" ..................................................................... 15

    (ii)  Even if Koki's Proposed Construction Is Correct, Factual
        Issues Remain as to Whether the Asserted Claims Are
        Invalid ................................................................................. 20

  B.  The SN325+ Nailer Qualifies as Prior Art .......................................... 21

    (i)  Defendant Has Presented Sufficient Evidence to Create a
        Genuine Dispute of Fact as to Whether the SN325+
        Nailer Was On Sale and Publicly Available Before the
        Critical Date ......................................................................... 21

i

(ii)    Koki Improperly Narrows the Focus of the Inquiry to Whether the Exemplary Physical Model of the SN325+ Nailer was On Sale and/or Publicly Available Before the Critical Date ............................................................................23

VI.    CONCLUSION.................................................................................28

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abtox, Inc. v. Exitron Corp.*,
   122 F.3d 1019 (Fed. Cir. 1997) .............................................................................19

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
   512 F.3d 1338 (Fed. Cir. 2008) .....................................................................*passim*

*Beachcombers v. WildeWood Creative Prods., Inc.*,
   31 F.3d 1154 (Fed. Cir. 1994) ...............................................................................22

*CANVS Corp. v. Nivisys, LLC*,
   No. 2:14-CV-99-FTM38MRM, 2015 WL 6560621
   (M.D. Fla. Oct. 29, 2015) ......................................................................................17

*EMC Corp. v. PersonalWeb Techs., LLC*,
   IPR2013-00086, Paper No. 66, 2014 WL 2090665 (P.T.A.B. May
   15, 2014), *aff'd*, 612 F. App'x 611 (Fed. Cir. 2015) ...........................................26

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) .............................................................................17

*f'real foods, LLC v. Hamilton Beach Brands, Inc.*,
   No. CV 16-41-CFC, 2019 WL 1596119 (D. Del. Apr. 15, 2019).......................22

*Hilgraeve, Inc. v. Symantec Corp.*,
   271 F.Supp.2d 964 (E.D. Mich. 2003) ..................................................................26

*Insight Tech., Inc. v. SureFire, LLC*,
   No. 04-cv-74-JD, 2007 WL 3244092 (D.N.H. 2007)...........................................27

*Instituform Techs., Inc. v. Cat Contracting, Inc.*,
   99 F.3d 1098 (Fed. Cir. 1996) ..........................................................................16, 17

*Invitrogen Corp. v. Biocrest Mfg. L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005) ........................................................................14, 22

*KCJ Corp. v. Kinetic Concepts, Inc.*,
   223 F.3d 1351 (Fed. Cir. 2000) .............................................................................15

*Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*,
 322 F.3d 1335 (Fed. Cir. 2003) ...........................................................................24

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
 358 F.3d 898 (Fed. Cir. 2004) .............................................................................18

*In re Merck & Co.*,
 800 F.2d 1091 (Fed. Cir. 1986) ..........................................................................21

*Oceaneering Int'l, Inc. v. Trendsetter Eng'g, Inc.*,
 No. 16-cv-2797, 2016 WL 7388390 (S.D. Tex. Dec. 20, 2016) .......................19

*Pfaff v. Wells Elecs., Inc.*,
 525 U.S. 55 (1998)................................................................................15, 23, 24

*Summit Tech., Inc. v. Nidek Co., Ltd.*,
 363 F.3d 1219 (Fed. Cir. 2004) ..........................................................................17

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
 299 F.3d 1313 (Fed. Cir. 2002) ..........................................................................18

*United States v. Adibe*,
 No. CRIM.A. 08-42-JJF, 2009 WL 2877972 (D. Del. Sept. 3,
 2009) ..................................................................................................................27

## Statutes

35 U.S.C. § 102(b) ..................................................................................*passim*

iv

## TABLE OF EXHIBITS

| Exhibit[1] | Description of Document | Abbreviation |
|---|---|---|
| Rigg Decl., Ex. 16 | Transcript Excerpts from Deposition of Glenn Vallee, Ph.D., taken June 3, 2020. | Vallee Tr. |
| Rigg Decl., Ex. 17 | Excerpts from Initial Expert Report of Keven Miller Regarding Invalidity, dated February 28, 2020. | Miller Initial |
| Rigg Decl., Ex. 18 | Excerpts from Reply Expert Report of Keven Miller Regarding Invalidity. | Miller Reply |
| Rigg Decl., Ex. 19 | Excerpts from Rebuttal Expert Report of Glenn Vallee, Ph.D. | Vallee Rebuttal |
| Shoemake Decl., Ex. 20 | Defendant Advertisement dated 1993, bearing bates numbers KSIT00098338-40. | Defendant Advertisement |
| Shoemake Decl., Ex. 21 | Excerpt from July 1991 edition of *Rural Builder* Magazine, bearing bates number KSIT00098532. | Magazine Advertisement |
| Shoemake Decl., Ex. 22 | Operating Instructions for the SN325+ Nailer dated 1997, bearing bates numbers KSIT00098374-90. | SN325+ Operating Instructions |
| Shoemake Decl., Ex. 23 | Parts Reference Guide for the SN325+ Nailer dated 1997, bearing bates numbers KSIT00098341-44. | SN325+ Parts Reference Guide |

---

[1] As used herein, exhibits attached to the Rigg Declaration will be referred to by corresponding "Ex. R__," exhibits attached to the Shoemake Declaration will be referred to by corresponding "Ex. S__," and exhibits attached to the McCardle Declaration will be referred to by corresponding "Ex. M__." The Rigg, Shoemake, and McCardle declarations are all attached to Defendant's Response to Plaintiff's Statement of Undisputed Facts, filed concurrently herewith.

| Exhibit[1] | Description of Document | Abbreviation |
|---|---|---|
| Shoemake Decl., Ex. 24 | Collection of Replacement Parts Charts for the SN325+ Nailer, bearing bates numbers KSIT00098402-05, 98421-24, 98491-94. | SN325+ Replacement Parts Charts |
| Shoemake Decl., Ex. 25 | Collection of Service Notes for the SN325+ Nailer, bearing bates numbers KSIT00098407-10, 98425, 98430-35, 98437, 98442-43, 98446. | SN325+ Service Notes |
| McCardle Decl., Ex. 26 | Collection of Manufacturing Drawings for the SN325+ Nailer, bearing bates numbers KSIT002611-19, 98345-48, 98372, 98484. | SN325+ Manufacturing Drawings |

RLF1 23700532v.1

## I.      INTRODUCTION AND STAGE OF PROCEEDINGS

Defendant Kyocera Senco Industrial Tools, Inc. ("Defendant") respectfully submits this response and opposition to Plaintiff Koki Holdings Co. Ltd.'s ("Koki") motion for summary judgment that U.S. Patent Nos. 7,156,012 ("'012 Patent") and 7,398,647 ("'647 Patent") are not invalid.

In its brief in support of its motion (D.I. 137, "Koki Br."), Koki contends that Defendant cannot meet its burden of proving that the asserted claims of the '012 Patent and '647 Patent are invalid for two reasons: (1) the prior art does not have "a channel" as required by the asserted claims because the prior art has *four* crossover holes that provide fluid communication between the main valve chamber and trigger valve, as opposed to a *single* channel that performs the same function; and (2) there is insufficient evidence to establish that the prior art was on sale or in public use before the critical date of the asserted patents.  (Koki Br. at 7-8).

In both instances, Koki makes critical errors of law that are fatal to its assertion that summary judgment is appropriate, and thus Defendant opposes Koki's motion for the reasons below.

## II.     SUMMARY OF ARGUMENT

Koki improperly attempts to limit the scope of the claim terms "*a* first channel" and "*a* main valve control channel" as found in the asserted claims to exclude multiple channels as found in a prior art reference.  But Koki has failed to

present any intrinsic evidence that necessitates a departure from the rule that "a" as used in a patent claim refers to "one or more."  Thus, the "a first channel" and "a main valve control channel" can include "one or more channels," and therefore the four channels found in the SN325+ Nailer are collectively "a first channel" and a "main valve control channel."  In addition, even if Koki's proposed construction is correct, factual issues still exist as to whether Defendant's obviousness combination of Ishizawa and the SN325+ Nailer invalidates the asserted claims because Defendant has presented sufficient evidence for a reasonable jury to decide that the resulting combination has a single "first channel" that practices the claimed ratio.

Defendant asserts that the public use and sale of its own SN325+ Nailer before the critical date of the '012 and '647 Patents qualifies as prior art under 35 U.S.C. § 102(b).  To support its assertion, Defendant provided various evidence establishing prior public use and sale, including an exemplary physical sample of the SN325+ Nailer manufactured several years before the filing date of the '012 and '647 Patents. Koki, in asserting that Defendant cannot prove that the SN325+ is prior art, incorrectly contends that Defendant must prove that this specific physical SN325+ Nailer was publicly available or on sale.  Koki has not provided any legal authority to support its assertion that a physical sample that was actually on sale or in public use is necessary to meet the on sale and public use bars of 35 U.S.C. § 102(b).  To

2

the contrary, no such showing is required, and thus Koki has failed to present any viable argument as to why summary judgment is appropriate here.

## III.   STATEMENT OF FACTS

### A.   U.S. Patent Nos. 7,156,012 and 7,398,647

(i)   *The Asserted Claims*

The '012 and '647 Patents, which are related and thus share a common specification, are generally directed to a pneumatically powered fastener driving tool. (Koki Br. at 3, n.3). Claim 1 of the '647 Patent, which is representative of asserted claims 1-4 of the '012 Patent and asserted claim 10 of the '647 Patent, is reproduced below with relevant limitations emphasized.

> A fastener driving tool comprising:
> a frame defining therein an accumulator that accumulates compressed air;
> a cylinder disposed within the frame;
> a piston disposed within the cylinder and movable between a top dead center and a bottom dead center, a piston upper chamber being defined by an inner peripheral surface of the cylinder and an upper surface of the piston;
> a main valve section disposed in the frame and having a main valve movable between a top dead center and a bottom dead center to alternately open and block fluid communication between the piston upper chamber and the accumulator, ***a main valve chamber*** being defined by an upper surface of the main valve and a part of the frame;
> a trigger valve section having a plunger movable between a top dead center and a bottom dead center so as to alternately open and block fluid communication from the accumulator to the main valve chamber to atmosphere;
> ***a first channel providing a fluid communication between the main valve chamber and the trigger valve section***; and
> a trigger adapted to press the plunger when operated by a user;

3

> *wherein a ratio obtained from dividing a maximum internal volume of the main valve chamber measured in m3 by a cross sectional area of the first channel measured in m2 is no greater than 0.8*.

(Flynn Decl.,[2] Ex. B ('647 Patent), 29:25-55).[3]  Relevant here, the '012 Patent recites "a first channel" [4] which has the function of "providing a fluid communication" between two other components of the claimed tool.  (*Id*., 29:47-49).  The "first channel" limitation later appears in the asserted claims with respect to a "ratio" involving the total "cross sectional area of *the first channel*."  (*Id*., 29:52-55).  Other than the claimed "fluid communication" and total "cross sectional area," the asserted claims do not otherwise limit the shape, structure, or design of the "first channel."

### (ii)   *The Specification*

The specification of the '647 Patent describes an exemplary embodiment of a pneumatic nailer that includes the claimed "ratio" and a "main valve control channel 40," which corresponds to the claimed "first channel" of the asserted claims of the '012 Patent.  (Flynn Decl., Ex. B ('647 Patent), 9:44-52; Koki Br. at 5 n.4).  The "main valve control channel 40" provides a fluid connection between the "main

---

[2] The "Flynn Decl." is attached to Koki's Statement (D.I. 136) filed concurrently with Koki's motion.

[3] All emphasis is added herein unless otherwise indicated.

[4] As noted by Koki, the '012 Patent recites "a main valve control channel" instead of a "first channel."  (Koki Br. at 5 n.4).  Defendant agrees that "[f]or purposes of this case, the 'main valve control channel' and 'first channel' are equivalent" and thus they are used interchangeably herein.  (*Id*.).

4

valve chamber 8" and the "trigger valve 6." (Flynn Decl., Ex. B ('647 Patent), 7:35-40).  The specification describes the basic pneumatic principles behind the claimed "ratio obtained from dividing a maximum internal volume of the main valve chamber measured in m3 by a cross sectional area of the first channel":

> This value is set smaller than that in the conventional fastener driving tools. This is a design concept which, just as with the design concept described above, was also obtained as a result of recognition of the flow principle that, with fastener driving tools which have valve chambers, the time period required for the pressure in these valve chambers to drop to a specific pressure due to the discharge of air decreases in accordance with an increase in cross-sectional area of the channels used to discharge air with respect to the volume of these valve chambers.

(*Id.*, 12:15-28).  As a result of this claimed ratio, "the time period from when the trigger 39 and the push lever 42 are operated until the nailing motion occurs because of the displacement of the main valve 19 can be reduced" – *i.e.,* the tool will fire a fastener quicker after the user pulls the trigger.  (*Id.*, 12:40-43).  Thus, the total cross-sectional area of the "main valve control channel 40" (*i.e.*, the claimed "first channel"), is critical to achieving this goal.  The exemplary main valve control channel 40 includes "a bending section," which "does not cause significant flow path resistance" and thus "there is no obstruction in the flow of air in the main valve control channel 40." (*Id.*, 12:48-53).  The specification does not otherwise describe the shape, design, or structure of the "main valve control channel 40."

In sum, the exemplary main valve control channel is limited in shape, design, and structure by the following: (1) providing a fluid connection between the main

5

valve chamber 8 and trigger valve 6; (2) having a certain total cross sectional area; and (3) having a shape that does not cause significant flow path resistance or otherwise obstruct the flow of air in the channel.

### B.    The Prior Art

(i)    *Ishizawa*

U.S. Patent App. Pub. No. 2001/0009260 to Ishizawa et al. ("Ishizawa") describes a standard pneumatic nailer that includes a "main valve chamber" and "first channel" as shown below:



**Ex. R17, Miller Initial, ¶385**

(*See also* Ex. R17, Miller Initial, ¶¶382-383; *see also* Ex. 19, Vallee Rebuttal, ¶¶247-267 (not disputing the presence of a "main valve chamber" and "first

channel" in Ishizawa)).  The "first channel" in Ishizawa is a single channel that extends from the main valve chamber to the trigger valve.  (Ex. R17, Miller Initial, ¶385).  The dimensions of the "first channel" are not explicitly stated in Ishizawa. (*Id*., ¶387).

### (ii) *The SN325+ Nailer*

#### (1) *Defendant's Contentions Regarding Sale and Public Use of the SN325+ Nailer*

Defendant contends that its own SN325+ Nailer was on sale and in public use in the 1990s and thus qualifies as prior art to the '012 and '647 Patents under 35 U.S.C. § 102(b).  (Flynn Decl., Ex. G (Defendant's Responses and Objections to Plaintiff's Fourth Set of Interrogatories), 4-6).  To establish the prior public use and sale of the SN325+ Nailer, Defendant provides the following forms of evidence, which will be described in turn below: (1) an exemplary physical sample of the SN325+ Nailer that was manufactured in 1994; (2) declarations from an employee that has firsthand knowledge of the sale and public use of the SN325+ Nailer; (3) various public documents describing and offering for sale the SN325+ Nailer in the 1990s; and (4) internal service notes and parts drawings that verify the structure and operation of the SN325+ Nailer.  (*See, e.g., Id*.).

*First*, Defendant maintained a physical sample of the SN325+ Nailer as a production archive sample, which is shown in the image below.  (*Id*., 5; Shoemake Decl., ¶¶6-9).

7



**Ex. R17, Miller Initial, ¶57**

The physical SN325+ model includes the below engraving, which includes the model number "325" followed by the number "94903803." (Ex. R17, Miller Initial, ¶58; Shoemake Decl., ¶¶7-9).



**Ex. R17, Miller Initial, ¶58**

The "94903803" number identifies the production year in the first two numbers ("94" or 1994), the production month in the next number ("9" or September), and the production number of this particular model ("03803"). (Ex. R17, Miller Initial, ¶58; Shoemake Decl., ¶¶7-9). Thus, this model was produced in September 1994 and thus Defendant contends that the physical sample establishes

8

that the SN325+ was publicly available and on sale at least as of 1994.  ((Flynn Decl., Ex. G (Defendant's Responses and Objections to Plaintiff's Fourth Set of Interrogatories), 5 ("Thus, this model was produced in 1994 and thus the SN325+ was publicly available at least as of 1994.")).

*Second*, Defendant employee Charlie Shoemake has firsthand knowledge of the sale and public use of the SN325+ Nailer.  (Flynn Decl., Ex. G (Defendant's Responses and Objections to Plaintiff's Fourth Set of Interrogatories), 6; *see also* Shoemake Decl., ¶¶2-4).   Mr. Shoemake worked on the assembly line for the SN325+ Nailer from mid-1993 until the tool was discontinued around 1999. (Shoemake Decl., ¶¶3-5).  In addition, Mr. Shoemake located archived copies of documentation concerning the SN325+ Nailer that he recalls reviewing during his time assembling SN325+ Nailers in the 1990s.  (Shoemake Decl., ¶¶10-15).

*Third*, Defendant contends that several publications and other documentation further confirm that the SN325+ Nailer was publicly available and on sale in the 1990s.  (Flynn Decl., Ex. G (Defendant's Responses and Objections to Plaintiff's Fourth Set of Interrogatories), 5-6).  For example, a catalog distributed by Defendant that includes an offer to sell the SN325+ Nailer has a copyright date of 1993. (Shoemake Decl., ¶10, Ex. S20).  An excerpt from the July 1991 edition of *Rural Builder* magazine also includes an offer to sell the SN325+ Nailer.  (Shoemake Decl., ¶11, Ex. S21).  The SN325+ Nailer's Operating Instructions, which were

9

distributed with all SN325+ Nailers that were sold to the public, has a copyright date of 1997.  (Shoemake Decl., ¶12, Ex. S22).  Further, the parts reference guide and replacement parts charts for the SN325+ Nailer, which are a series of documents that are distributed by Defendant to the public to assist users in purchasing replacement parts and repairing the tool, all have copyright dates in the 1990s.  (Shoemake Decl., ¶¶13-14, Exs. S23, S24).

*Fourth*, Defendant also produced internal service notes and parts drawings for the SN325+ Nailer, all which are dated in the 1990s.  (Flynn Decl., Ex. G (Defendant's Responses and Objections to Plaintiff's Fourth Set of Interrogatories), 5-6; *see also* Shoemake Decl., ¶15, Ex. S25; McCardle Decl., ¶6, Ex. M26).  Defendant's technical expert, Keven Miller, compared the dated parts drawings and other documentation to the exemplary SN325+ model and confirmed that they have the same design and structure.  (*See, e.g.*, Ex. R17, Miller Initial, ¶¶389-396).

> (2)  *Defendant's Contentions Regarding the Structure of the SN325+ Nailer*

Defendant contends that the SN325+ Nailer has a "main valve chamber" and a "trigger valve" as required by the asserted claims of the '012 and '647 Patents.  (*See* Ex. R17, Miller Initial, ¶¶417-420).  Defendant further contends that the SN325+ Nailer has four crossover holes, shown in the image below, that together provide fluid communication between the "main valve chamber" and the "trigger valve."  (*Id.*, ¶¶389-390).

10



**Ex. R17, Miller Initial, ¶389**

Defendant's technical expert, Mr. Miller, opined that using multiple crossover holes as opposed to a single channel "was a common method used in the prior art", for example "to increase the response time of the nailer." (*Id*. at ¶390). Thus, Mr. Miller concluded that the SN325+'s four crossover holes are "equivalent to using a single crossover hole (or 'first channel') having the same cross-sectional area as the four crossover holes combined." (*Id*.). Thus, Defendant contends that these four channels collectively make up the claimed "first channel" that provide fluid communication between these two structures. (*Id*.).

    (iii)   *Defendant's Ishizawa/SN325+ Nailer Obviousness Combination*

As Koki noted, Defendant contends that "claims 1 and 10 of the '647 patent and claims 1-4 of the '012 patent are obvious based on [Ishizawa] in view of the

SN325+." (Koki Br. at 6). Defendant's expert, Mr. Keven Miller, provided his opinion on why the asserted claims are obvious in view of this combination in his Opening and Reply Reports. (Ex. R17, Miller Initial, ¶¶377-409, 425-466).

With respect to the "ratio" limitation discussed above (*see supra* Section III.A.i), Mr. Miller opined that "Ishizawa does not explicitly state the dimensions of its first channel or its main valve chamber" but "altering and optimizing the dimensions of the two structures claimed here is simply a matter of design choice that would have been obvious to a person of ordinary skill in the art." (Ex. R17, Miller Initial, ¶387). Mr. Miller further opined that "[o]ne of the most common ways to adjust the response time of nailers before the priority date of this patent was to adjust the various sizes of the chambers and channels found throughout pneumatic nailers." (*Id.*). Mr. Miller explained that one example of a prior art tool that utilizes the claimed "ratio" was the SN325+ Nailer, and "[i]t would have been obvious to a person of ordinary skill in the art to utilize the ratio practiced by the SN325+ with the pneumatic nailer described in Ishizawa." (*Id.*, ¶397).

Mr. Miller further explained that, because "Ishizawa has a single 'first channel,'" "a person of ordinary skill in the art, when implementing the 'ratio' taught by the SN325+ nailer into Ishizawa, would not add additional holes such as was done in the SN325+ because it would not be feasible" and "[i]nstead, a skilled artisan would widen the single first channel already taught by Ishizawa." (Ex. R18, Miller

Reply, ¶¶183-184).  Thus, Defendant's combination of Ishizawa and the SN325+ Nailer results in a fastener driving tool having a single "first channel" that practices the ratio taught by the four-hole design in the SN325+ Nailer.  (*Id.*).

Further, while the SN325+ Nailer uses four separate crossover holes instead of a single channel, Mr. Miller opined that "[d]rilling additional crossover holes that provide fluid communication between the trigger valve and the main valve chamber was a common method used in the prior art to increase the response time of the nailer and is equivalent to using a single crossover hole (or "first channel") having the same cross-sectional area as the four crossover holes combined."  (Ex. R17, Miller Initial, ¶390).  Thus, Mr. Miller opined that a skilled artisan would have used the teaching of the SN325+ Nailer "to optimize the speed at which the pneumatic nailer fires after pulling the trigger."  (*Id.*, ¶397).

Indeed, the claimed ratio was "a well-known and important design element for skilled artisans to consider well before the priority date of the '647 Patent as a variable to adjust the speed and maximizing the energy potential of a pneumatic tool."  (*Id.*).  Koki's expert, Dr. Vallee, agrees and even has experience utilizing these basic pneumatic principles in designing pneumatic nailers in the 1990 timeframe, well before the priority date.  (Ex. R16, Vallee Tr., 157:21-158:14 (testifying that he considered "the volume of the [main valve] chamber" and "the size of the air channel that evacuate[s] the main valve" when designing a pneumatic

13

nailer in 1990); Ex. R19, Vallee Rebuttal, ¶254 ("It is well known to those of skill in the art that the minimum cross section of the first channel dictates its resistance to filling and purging the main valve chamber.")).

## IV.   LEGAL STANDARDS REGARDING THE ON SALE AND PUBLIC USE BARS UNDER 35 U.S.C. § 102(b)

Under Pre-AIA 35 U.S.C. § 102(b), a patent claim is invalid if "the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application."  A patent claim can be invalidated under either the public use bar _**or**_ the on sale bar.

"The proper test for the public use prong of the pre-AIA § 102(b) statutory bar is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited.  Commercial exploitation is a clear indication of public use, but it likely requires more than, for example, a secret offer for sale."  _Invitrogen Corp. v. Biocrest Mfg. L.P._, 424 F.3d 1374, 1380 (Fed. Cir. 2005).

"[T]he on-sale bar applies when two conditions are satisfied before the critical date.  First, the product must be the subject of a commercial offer for sale. . . . Second, the invention must be ready for patenting.  The second condition may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person

14

skilled in the art to practice the invention." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998).

## V.   ARGUMENT

### A.   Genuine Disputes of Material Fact Exist Regardless of Whether "A . . . Channel" is Limited to "A . . . Single Channel" as Koki Urges

(i)   *Koki Has Failed to Set Forth Any Evidence That Necessitates Construing "A . . . Channel" as "A . . . Single Channel"*

Koki urges the Court to limit each of "*a* first channel" and "*a* main valve control channel" as found in the asserted patents to "a *single* channel." (Koki Br. at 12). But the Federal Circuit "has repeatedly emphasized that an indefinite article '*a*' or '*an*' in patent parlance carries the meaning of '*one or more*' in open-ended claims containing the transitional phrase 'comprising.'" *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000). "The exceptions to this rule are *extremely limited*: a patentee must 'evince[ ] a clear intent' to limit 'a' or 'an' to 'one'" such that "the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008) (quoting *KCJ*, 223 F.3d at 1356). Koki has failed to present any intrinsic evidence that "necessitate[s] a departure from the rule." *Baldwin*, 512 F.3d at 1343.

Koki's focus on subsequent use of the "channel" limitations in the asserted claims ("cross-sectional area of *the* [first channel/main valve control channel]") is of no moment, because "[t]he subsequent use of definite articles '*the*' or 'said' in a

claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning."   *Id*. at 1342.   Further, Koki's assertion that "[n]othing in the language of the claim indicates" that the "channel" limitations can be satisfied by multiple different channels (*see* Koki Br. at 13) is off-base, because the correct query is whether any language of the claim "necessitate[s] a departure from the rule" that the "a . . . channel" limitations mean "one or more channels."[5]  *Baldwin*, 512 F.3d at 1343.  Koki has not identified any such language.

Instead, Koki digs up case law on the rare moments when the intrinsic record of a patent actually did "necessitate a departure from the rule."  *Id*.  But each case cited by Koki includes particular claim language that necessitated such a departure and that has no similarities to the limitations of the asserted claims here.  (Koki Br. at 13).  For example, Koki cites to *Instituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996) and the Court's holding that "a cup" was limited to a single cup.  (Koki Br. at 14).  But there the Court found that the exception to the rule applied because the surrounding claim language was "inconsistent with the use of more than one cup at any given time" and in fact "would be inconsistent with the

---

[5] Koki makes the same mistake of law when reviewing the specification.  (Koki Br. at 15) ("Nowhere does the specification suggest that multiple channels can be combined to form a main valve control channel.").  As with the claims, nowhere does the specification suggest that multiple channels ***cannot be combined*** to form a main valve control channel.

creation of a continuous, rather than discontinuous, vacuum" as required by the claim language. *Instituform*, 99 F.3d at 1105-1106. In contrast to the claims in *Instituform*, the asserted claims here limit the structure of the "first channel" in only two ways, neither of which precludes the use of multiple channels: (1) it fluidly connects the main valve chamber and the trigger valve; and (2) it has a given total cross sectional area. (*See supra* Section III.A.i; *see also* Flynn Decl., Ex. B ('647 Patent), 29:47-55). A single channel or multiple channels are each capable of meeting these two limitations, and thus the "one or more" rule is not inconsistent with the claim language here. Similarly, a road may be a two lane highway or a 10 lane superhighway that connects two locations, yet regardless of the number of lanes it is still a road.

The remaining cases cited by Koki are similarly inapposite. *See, e.g.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1342 (Fed. Cir. 2016) (holding that "a logical table" referred to a single column because the remainder of the claim language necessitated it by "describ[ing] rows and columns [of the logic table] without providing any suggestion that a second table has been introduced"); *Summit Tech., Inc. v. Nidek Co., Ltd.*, 363 F.3d 1219 (Fed. Cir. 2004) (rejecting a finding of infringement of a claim directed to Lasik eye surgery because the accused device applies a series of pulses that, by their nature, do not create a "single light spot" as required by the asserted claim); *CANVS Corp. v. Nivisys, LLC*, No. 2:14-CV-99-

17

FTM38MRM, 2015 WL 6560621, at *2 (M.D. Fla. Oct. 29, 2015) (holding that an exception to the "one or more" rule applied with respect to "a line of sight" because the "claim language reflect[ed] that the thermal imaging assembly and the image intensification assembly *operate on the same line of sight* to generate their respective images").

Koki next turns to the specification (*see* Koki Br. at 14-17), but once again fails to identify anything from the specification that "necessitate[s] a departure from the rule." *Baldwin*, 512 F.3d at 1343.  Instead, Koki can  point only to non-limiting exemplary embodiments.  But "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

There is no such clear intention here.  In fact, the specification's description of the "channel" limitations (identified as "main valve control channel 40") actually supports Defendant's position that "a . . . channel" as recited in the claims refers to "one or more . . . channels."  As explained above, the exemplary embodiments described in the specification describe the structure of the "main valve control channel 40" in three ways: (1) providing a fluid connection between the main valve

18

chamber 8 and trigger valve 6; (2) having a certain total cross sectional area; and (3) having a shape that does not cause significant flow path resistance or otherwise obstruct the flow of air in the channel.  (*See supra* Section III.A.ii).  Multiple channels or a single channel are each capable of meeting these three requirements. With respect to the relationship between the firing speed of the tool and the claimed "ratio," the firing speed can be increased by increasing the cross-sectional area of "a channel," *i.e.*, "one or more channels" including by having a single channel having a large cross-sectional area or having multiple channels that combine to provide a larger cross-sectional area.

Koki finishes by citing to two additional examples (*see* Koki Br. at 17) of instances when the intrinsic record of a patent actually did "necessitate a departure from the rule" that "a" refers to "one or more."  *Baldwin*, 512 F.3d at 1343.  In the first, *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019 (Fed. Cir. 1997), the Court held that the claim term "a . . . chamber" was limited to a single chamber because the surrounding claim "language clarifie[d] that only one chamber [was] in question." *Id*. at 1023-24.  As explained before, there is no such surrounding claim language in the asserted claims of the '012 and '647 Patents.  In the second case cited by Koki, *Oceaneering Int'l, Inc. v. Trendsetter Eng'g, Inc.*, No. 16-cv-2797, 2016 WL 7388390 (S.D. Tex. Dec. 20, 2016), the District Court held that "flow path" was limited to a single path because the asserted patent "expressly disparages prior art

that used . . . multiple flow paths" and thus "[t]he patent therefore evince[d] a clear intent to limit the device to a single flow path." *Id*. at *4-6. In contrast, the '012 and '647 Patents do not disparage use of multiple channels.

In sum, Koki has failed to identify anything in "the language of the claims themselves, the specification, or the prosecution history [that] necessitate a departure from the rule" that "a" means "one or more." *Baldwin*, 512 F.3d at 1343. Thus, the Court should construe "a . . . channel" as "one or more . . . channels."

> (ii) *Even if Koki's Proposed Construction Is Correct, Factual Issues Remain as to Whether the Asserted Claims Are Invalid*

Koki is incorrect in its assertion that, if "a first channel" is limited to a single channel, "Kyocera cannot prove that Ishizawa in view of the SN325+ model renders the asserted claims of the '012 and '647 patent[s] obvious." (*See* Koki Br. at 18-19). As discussed above, Defendant's proposed obviousness combination of *Ishizawa* and the SN325+ Nailer results in a fastener driving tool that has a ***single*** first channel that also practices the claimed ratio. (*See supra* Section III.B.iii). Defendant's expert opined that the SN325+'s four crossover holes are "equivalent to using a single crossover hole (or 'first channel') having the same cross-sectional area as the four crossover holes combined." (Ex. R17, Miller Initial, ¶390). Thus, even if Koki's proposed construction is correct, a genuine dispute exists as to whether the asserted claims of the '012 and '647 Patents are invalid.

Koki, in arguing that there is no genuine dispute, improperly attacks Defendant's prior art combination by pointing out that neither reference practices the claimed ratio *individually*.  (Koki Br. at 18 ("Kyocera concedes that Ishizawa does not explicitly disclose the dimensions of the main valve control channel/first channel or main valve chamber" and "as noted above, the SN325+ model does not satisfy the '012 and '647 Ratio Limitations . . . .")).  But "non-obviousness cannot be established by attacking references *individually* where the rejection is based upon the teachings of a *combination* of references."  *In re Merck & Co.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986).  Since Koki fails to address the *true combination* proposed by Defendant – *i.e.,* a nailer having a single first channel/main valve control channel that practices the claimed ratio – summary judgment is not appropriate.

## B.   The SN325+ Nailer Qualifies as Prior Art

(i)   *Defendant Has Presented Sufficient Evidence to Create a Genuine Dispute of Fact as to Whether the SN325+ Nailer Was On Sale and Publicly Available Before the Critical Date*

As explained above, Defendant provided the significant evidence establishing that the SN325+ Nailer was publicly available and on sale prior to the critical date: (1) an exemplary physical sample of the SN325+ Nailer that was manufactured in 1994; (2) testimony from Defendant employees who have firsthand knowledge of the sale and public use of the SN325+ Nailer; (3) various public documents describing and offering for sale the SN325+ Nailer in the 1990s; and (4) internal

21

manufacturing drawings that verify the structure and operation of the SN325+ Nailer.  (*See supra* Section III.B.ii).  Each of these four categories of evidence, when combined ***and individually***, create a genuine dispute of material fact such that summary judgment is precluded.

With respect to the public use bar of 35 U.S.C. § 102(b), Defendant presented clear evidence of the manufacture and sale of the SN325+ Nailer, creating a genuine dispute as to whether the SN325+ Nailer "(1) was accessible to the public; or (2) was commercially exploited."  *Invitrogen*, 424 F.3d at 1380.  Defendant's possession of an actual production model, firsthand testimony from a Defendant employee regarding sale of the tool, and a series of publicly distributed and dated advertisements, parts charts, and instruction manuals (*see supra* Section III.B.ii) clearly establish that the SN325+ Nailer was "commercially exploited."  *See, e.g.*, *Beachcombers v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1160 (Fed. Cir. 1994) (affirming finding of public use based on firsthand witness testimony and a dated diary entry).  At a minimum, each of these categories of evidence at least creates a genuine dispute of fact as to whether the SN325+ Nailer was "commercially exploited" prior to the 2003 critical date of the '012 and '647 Patents. *See, e.g.*, *f'real foods, LLC v. Hamilton Beach Brands, Inc.*, No. CV 16-41-CFC, 2019 WL 1596119, at *1 (D. Del. Apr. 15, 2019) (declining to grant summary judgment where there "may be genuine issues of material fact").

With respect to the on sale bar of 35 U.S.C. § 102(b), Defendant has at least create a genuine dispute of material fact as to whether the SN325+ Nailer was "the subject of a commercial offer for sale" and "ready for patenting." *Pfaff*, 525 U.S. at 67.  Mr. Shoemake's firsthand testimony concerning the sale of the SN325+ in the 1990s, supporting documentation, and a physical model of the SN325+ tool itself that was manufactured in 1994 (*see supra* Section III.B.ii) all demonstrate that the SN325+ Nailer was widely sold in the United States prior to the critical date of the '012 and '647 Patents, and thus the SN325+ Nailer was necessarily "ready for patenting" and "the subject of a commercial offer for sale" at that time.  *Pfaff*, 525 U.S. at 67.

> (ii)     *Koki Improperly Narrows the Focus of the Inquiry to Whether the Exemplary Physical Model of the SN325+ Nailer was On Sale and/or Publicly Available Before the Critical Date*

While Defendant contends that the exemplary physical model of the SN325+ Nailer is just one part of the collection of evidence that establishes that the SN325+ Nailer was on sale and publicly available prior to the critical date of the '012 and '647 Patents, Koki inexplicably focuses on whether the ***specific physical model*** was ever publicly available.  (*See, e.g.,* Koki Br. at 19 ("Kyocera has produced no evidence whatsoever . . . that would allow a jury to conclude that ***the SN325+ model on which it relies as prior art was publicly available before January 20, 2003***.")).

Koki does not provide any explanation, let alone legal authority, as to why Defendant must establish that this specific model was publicly available.

To the contrary, physical samples are not even necessary to demonstrate that the invalidating product was on sale or in public use prior to the critical date. For example in *Pfaff*, the Supreme Court found that "proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention" was sufficient to satisfy the "on sale bar." 525 U.S. at 67. The Federal Circuit has even held that corroborated witness testimony, without a physical sample, can establish that an invention was on sale or in public use prior to the critical date. *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*, 322 F.3d 1335, 1349 (Fed. Cir. 2003) ("Whether the asserted identity of the product with the claimed invention has been sufficiently corroborated, either by documentary or testimonial evidence, is generally measured under a rule of 'reason' standard."). Thus, Koki's focus on the specific exemplary SN325+ model is clearly improper, as the correct inquiry is whether the evidence establishes that the claimed invention, as embodied by the SN325+ Nailer, was on sale or in public use prior to the critical date of the '012 and '647 Patents.

For the remainder of its argument, Koki fatally accepts as true its mistaken premise that public availability of a specific physical model must be established. For

example, Koki contends that "Kyocera admits that this 'particular physical sample was retained in the Kyocera Senco Engineering Lab as a production archive sample since it was manufactured'" and that "such secret use [is not] public use." (Koki Br. at 20 (quoting Flynn Decl., Ex. G (Defendant's Responses and Objections to Plaintiff's Fourth Set of Interrogatories), 7)). But of course, the physical model is simply exemplary of the SN325+ product that was widely sold and thus the use was not "secret" as suggested by Koki. For the same reason, Koki's argument that "Kyocera also has offered no witness with contemporaneous knowledge of the alleged public availability of the SN325+ *model*" is fatally flawed. (Koki Br. at 20).

Koki also falsely states that "Kyocera . . . admits that none of its witnesses has any firsthand knowledge of *any* offer for sale and/or public use of the SN325+." (Koki Br. at 20). Koki cites to its Statement of Fact 26 to support this assertion, but Statement of Fact 26 states that "[n]o current Kyocera Senco employee has firsthand knowledge of the *first* offer for sale and/or *first* public availability of the SN325+ Nailer," not "*any*" offer for sale and/or public use as Koki alleges. (D.I. 136 at 5). Further, while Koki has not provided any authority that requires a witness with "firsthand knowledge" to establish an offer for sale or public use, Defendant has provided a witness with firsthand knowledge of the sale and public availability of the SN325+ Nailer. (Shoemake Decl., ¶¶2-5).

25

Koki also summarily dismisses all of the documentation establishing that the SN325+ Nailer was on sale and publicly available because "nothing in these documents proves that *the particular SN325+ model* on which Kyocera relies was ever publicly available as of the critical date."   (Koki Br. at 21 (emphasis in original)).   Again, Koki's focus on the physical model is off-base as it is simply exemplary of the SN325+ product that was widely sold.   Koki goes on to incorrectly state that "Kyocera has offered no proof that any of those documents were publicly available."   (*Id.*).   To the contrary, Defendant employee Charlie Shoemake has contemporaneous knowledge of and maintained archives of this and other power tool documentation that was shared by Defendant with the public. (Shoemake Decl., ¶¶10-15, Exs. S20-S25).

Koki finishes by summarily concluding that all of these documents "are inadmissible hearsay that cannot defeat summary judgment."   (Koki Br. at 22). However, the cases cited by Koki are inapplicable here because Defendant has presented supporting testimony to establish the admissibility of these documents. *See, e.g.*, *EMC Corp. v. PersonalWeb Techs., LLC*, IPR2013-00086, Paper No. 66, 2014 WL 2090665, at *17 (P.T.A.B. May 15, 2014), *aff'd*, 612 F. App'x 611 (Fed. Cir. 2015) (rejecting argument that "copyright date" was hearsay because witness testimony "sufficiently establishes that" the reference existed "prior to the critical date"); *see also Hilgraeve, Inc. v. Symantec Corp.*, 271 F.Supp.2d 964, 975 (E.D.

Mich. 2003) ("[a] date imprinted on a document, *without more*, does not prove" prior public use or sale); *Insight Tech., Inc. v. SureFire, LLC*, No. 04-cv-74-JD, 2007 WL 3244092, *6 (D.N.H. 2007) (finding "sufficient evidence as to the dates" of certain documents).  Thus, the business records exception under Fed. R. Evid. 803(6) applies because Mr. Shoemake has contemporaneous knowledge of this documentation and has testified that these documents were made in the 1990s, were kept in the ordinary course of business at Defendant, and were part of Defendant's regular practice.[6]  (*See* Shoemake Decl., ¶¶10-15, Exs. S20-S25); *see United States v. Adibe*, No. CRIM.A. 08-42-JJF, 2009 WL 2877972, at *2 (D. Del. Sept. 3, 2009) ("In order to admit a document under the business records exception to the hearsay rule, the party seeking admission must lay a foundation through the testimony of a 'custodian' or other 'qualified witness' that: 1) the declarant in the records had knowledge to make accurate statements; 2) the record was made at the time of the event recorded; 3) it was the regular practice of the business to make the record; and 4) the record was kept in the regular course of business.").

---

[6] Regardless, even if these documents were inadmissible with respect to the copyright dates, the testimony of a Defendant witness and a physical sample of the SN325+ Nailer still create a genuine issue of material fact as to whether the SN325+ Nailer was on sale and/or in public use prior to the 2003 critical date.  (*See supra* Section III.B.ii).

## VI.   CONCLUSION

For the foregoing reasons, the Court should deny Koki's motion in its entirety.


/s/ Kelly E. Farnan
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square

OF COUNSEL:                                920 North King Street
                                           Wilmington, DE 19801
Robert S. Rigg                             (302) 651-7700
David Bernard                              farnan@rlf.com
John K. Burke
Vedder Price P.C.                          *Attorneys for Defendant*
222 North LaSalle Street                   *Kyocera Senco Industrial Tools,*
Chicago, IL  60601                         *Inc.*
(312) 609-7500
rrigg@vedderprice.com
dbernard@vedderprice.com
jburke@vedderprice.com


Dated:  July 10, 2020

28

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

The foregoing DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT THAT U.S. PATENT NOS. 7,156,012 AND 7,398,647 ARE NOT INVALID complies with the type-volume limitations of Paragraph 12(b) of the Scheduling Order (D.I. 14). The text of this brief, including footnotes, was prepared in Times New Roman 14-point. According to the word processing system used to prepare it, this brief contains 6,512 words, excluding the case caption, tables, and signature block.  Defendant's opposition to Koki's Daubert and summary judgment motions are a combined 9,334 words, excluding the case captions, tables, and signature blocks.


*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Dated:  July 10, 2020                       farnan@rlf.com