# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KOKI HOLDINGS CO., LTD., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 18-313 (CFC) |
| | ) |
| v. | ) |
| | ) |
| KYOCERA SENCO INDUSTRIAL TOOLS, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
## TO EXCLUDE CERTAIN OPINIONS OF MR. KEVEN MILLER

OF COUNSEL:

Robert S. Rigg
David Bernard
John K. Burke
Vedder Price P.C.
222 North LaSalle Street
Chicago, IL 60601
(312) 609-7500

Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
302-651-7700
farnan@rlf.com

*Attorneys for Defendant Kyocera Senco Industrial Tools, Inc.*

Dated: July 10, 2020

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................i

TABLE OF EXHIBITS ................................................................................................... ii

I.   INTRODUCTION .................................................................................................1

II.  SUMMARY OF ARGUMENT.............................................................................1

III. STATEMENT OF FACTS....................................................................................2

    A.   The '987 Patent .........................................................................................2

    B.   Dr. Vallee's Opinion on Infringement ....................................................2

    C.   Mr. Miller's Opinion on Non-Infringement...........................................3

IV.  LEGAL STANDARDS REGARDING INFRINGEMENT OF MEANS-PLUS-FUNCTION LIMITATIONS................................................5

V.   ARGUMENT..........................................................................................................6

    A.   Mr. Miller Properly Applied the Legal Framework..............................6

    B.   Koki Ignores the Legal Standard under Which a Means-Plus-Function Limitation Must Be Analyzed................................................8

VI.  CONCLUSION....................................................................................................12

VP/#37280303.3

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acme Highway Prods. Corp. v. D.S. Brown Co.*,
   473 F.2d 849 (6th Cir. 1973), *cert. denied* 414 U.S. 824 (1973) .........................8

*Amstar Corp. v. Envirotech Corp.*,
   730 F.2d 1476 (Fed. Cir. 1984) ...........................................................................9

*Applied Med. Res. v. U.S. Surgical Corp.*,
   448 F.3d 1324 (Fed. Cir. 2006) ...........................................................6, 7, 9, 12

*Baran v. Medical Device Techs, Inc.*,
   616 F.3d 1309 (Fed. Cir. 2010) ......................................................................1, 6

*Bernard Dalsin Mfg. Co. v. RMR Prods., Inc.*,
   2001 WL 482374, 10 F. App'x 882 (Fed. Cir. 2001).........................................10

*I-Flow Corp. v. Wolf Med. Supply, Inc.*,
   No. SACV 09-0762-AG, 2009 WL 10697983 (C.D. Cal.
   Sept. 28, 2009) ..............................................................................................9, 10

*JVW Enters., Inc. v. Interact Accessories, Inc.*,
   424 F.3d 1324 (Fed. Cir. 2005) ....................................................................10, 11

*SunTiger, Inc. v. Scientific Research Funding Group*,
   189 F.3d 1327 (Fed. Cir. 1999) ...........................................................................9

**Statutes**

35 U.S.C. § 112, ¶ 6 ....................................................................................................2, 6

## TABLE OF EXHIBITS

| Exhibit[1] | Description of Document | Abbreviation |
|---|---|---|
| 15 | Transcript Excerpts from Deposition of Keven Miller, taken June 5, 2020. | Miller Tr. |
| 16 | Transcript Excerpts from Deposition of Glenn Vallee, Ph.D., taken June 3, 2020. | Vallee Tr. |

---

[1] As used herein, exhibits attached to the Rigg Declaration will be referred to by corresponding "Ex. R__." The Rigg declaration is attached to Defendant's Response to Plaintiff's Statement of Undisputed Facts, filed concurrently herewith.

## I. INTRODUCTION

Defendant Kyocera Senco Industrial Tool, Inc. ("Defendant") respectfully submits this brief in opposition to Plaintiff Koki Holdings Co. Ltd.'s ("Koki") Motion to Exclude Certain Opinions of Mr. Keven Miller (D.I. 139) and brief in support thereof (D.I. 140, "Koki Br."). Koki seeks to exclude opinions of Defendant expert, Mr. Miller, by incorrectly presenting the standard under which infringement of a means-plus-function claim limitation is determined. Under the correct standard, there is no question that Mr. Miller applied a legally proper framework to determine that Defendant's JoistPro 150XP Nailer ("JoistPro") does not infringe asserted claims 14-19 of U.S. Patent No. 42,987 (the "'987 Patent").

Thus, Koki's motion should be denied.

## II. SUMMARY OF ARGUMENT

The Court should deny Koki's motion because Mr. Miller clearly applied the correct legal standard for infringement of a means-plus-function limitation in his analysis. "In order to prove literal infringement of a means-plus-function claim, the plaintiff must show that the accused device performs the recited function through structure that is the same as or equivalent to the corresponding structure set forth in the specification." *Baran v. Medical Device Techs, Inc.*, 616 F.3d 1309, 1316-17 (Fed. Cir. 2010) (citing 35 U.S.C. § 112, ¶ 6). With respect to the "push portion" means-plus-function claim limitation, Mr. Miller identified the relevant structure in

the JoistPro that performed the claimed function and determined that the relevant structure was not identical or equivalent to the corresponding structure described in the specification of the '987 Patent. Koki's argument entirely ignores this framework, and thus the motion should be denied.

## III. STATEMENT OF FACTS

### A. The '987 Patent

The asserted claims of the '987 Patent each recite a "push portion," which the Court construed as a means-plus-function limitation subject to interpretation under 35 U.S.C. § 112, ¶ 6. (D.I. 53 at 1). The Court determined that the recited function and corresponding structure found in the specification of the '987 Patent are as follows:

> Function: "operation of the trigger switch is enabled when the end of the push portion is prevented from moving downward"
>
> Structure: "safety portion 12 that is mechanically coupled to trigger 11, the safety portion 12 consisting of upper safety portion 20, cam member 21, and lower safety portion 22."

(*Id.*).

### B. Dr. Vallee's Opinion on Infringement

Koki's expert, Dr. Vallee, as part of his ultimate opinion that Defendant's JoistPro infringes the asserted claims of the '987 Patent, opined that the JoistPro has

a "push portion" under the Court's construction. (Flynn Decl.,[2] Ex. C (Vallee Opening), ¶¶133-138). Dr. Vallee identified several components in the JoistPro's safety mechanism as the "safety portion 12 consisting of upper safety portion 20, cam member 21, and lower safety portion 22." (*Id.*, ¶135). Dr. Vallee did not explain how these components work together to perform the claimed function of "operation of the trigger switch is enabled when the end of the push portion is prevented from moving downward." Rather, Dr. Vallee contended that the "safety portion 12" he identified in the JoistPro is part of a larger safety mechanism having additional pneumatic components that performs the claimed function. (*Id.*, ¶¶136-137; Ex. R16, Vallee Tr. at 87:7-14 (agreeing that "pneumatic components" in the JoistPro's safety mechanism are required to perform the claimed function)). While Dr. Vallee recognized that additional components are necessary to carry out the claimed function of the "push portion," he concluded that this fact was irrelevant to the question of infringement. (Ex. R16, Vallee Tr., 86:7-87:6).

      C.    **Mr. Miller's Opinion on Non-Infringement**

In his Rebuttal Report, Mr. Miller disagreed with Dr. Vallee's opinion that the JoistPro has a "push portion." (Flynn Decl., Ex. E (Miller Rebuttal), ¶¶38-48). In response to Dr. Vallee's identification of structures on the JoistPro's safety

---

[2] The "Flynn Decl." is attached to Koki's Statement (D.I. 136) filed concurrently with Koki's motion.

mechanism that allegedly meet the corresponding structure of the "push portion" limitation (upper safety portion 20, cam member 21, and lower safety portion 22), Mr. Miller repeatedly opined that the structures identified by Dr. Vallee cannot carry out the claimed function of the "push portion:" "operation of the trigger switch is enabled when the end of the push portion is prevented from moving downward." (*Id.*). Instead, Mr. Miller explained that the JoistPro's safety mechanism also requires additional pneumatic components and a pressurized air supply to operate:

> Dr. Vallee fails to explain how his identified upper safety portion 20, cam member 21, and lower safety portion 22 work together to achieve the function of the claimed "push portion:" "operation of the trigger switch is enabled when the end of the push portion is prevented from moving downward." ***This is because these components do not perform the claimed function because the JoistPro's safety mechanism also requires additional pneumatic components and a pressurized air supply to operate***. (*Id.*, ¶39) (emphasis added). [3]
>
> If the JoistPro 150XP is not connected to an air supply, the safety portion does not move downward when the trigger is pressed to the absence of pressurized air pressing against the top of the upper safety portion. ***In other words, in the absence of these pneumatic components, the JoistPro 150XP's safety mechanism does not satisfy the requirement that the claimed "push portion" enables "operation of the trigger switch . . . when the end of the push portion is prevented from moving downward***." This is in stark contrast to the '987 Patent's purely mechanical "push portion," which operates with or without the presence of a pressurized air supply. ***Thus, the alleged "push portion" identified by Dr. Vallee does not meet the claimed function***. (*Id.*, ¶44).
>
> In summary, I believe that there are seven essential differences between the JoistPro 150XP and the teaching of the '987 Patent: (1) ***the JoistPro***

---

[3] All emphasis is added herein unless otherwise noted.

> ***150XP's safety mechanism is pneumatically powered and needs additional components to perform the claimed function***. (*Id.*, ¶47).
>
> In my opinion, ***Dr. Vallee's high level analysis is just a regurgitation of the claim construction provided by the Court and does not explain how the JoistPro 150XP has <u>structure</u> equivalent to the "push portions" structure***: "safety portion 12 that is mechanically coupled to trigger 11, the safety portion 12 consisting of upper safety portion 20, cam member 21, and lower safety portion 22." Instead, Dr. Vallee's analysis ignores the Court's construction of "push portion." ***In addition, even at a high-level Dr. Vallee's analysis is improper as the "way" the JoistPro 150XP achieves the claimed function is through the use of pneumatic components whereas the '987 Patent uses purely mechanical components to achieve the function***. (*Id.*, ¶48).

Mr. Miller also repeated this same opinion at his deposition. (Ex. R15, Miller Tr., 222:11-17 (explaining that "[t]here are other requirements for the JoistPro to execute the required function," "specifically a piston, specifically a cylinder, specifically a valve stem, specifically a valve housing, pneumatic air, seals"); *see also id.* at 223:22-224:3 ("**Q.** In order to meet the push portion limitation, a product must only use a safety portion that is mechanically coupled to trigger 11, the safety portion consisting of an upper safety portion 20, a cam member 21, and a lower safety portion 22 to perform the required function? **A.** Or the equivalent thereof.")).

## IV. LEGAL STANDARDS REGARDING INFRINGEMENT OF MEANS-PLUS-FUNCTION LIMITATIONS

The Federal Circuit has explained that "[i]n order to prove literal infringement of a means-plus-function claim, the plaintiff must show that the accused device performs the recited function through structure that is the same as or equivalent to

5

the corresponding structure set forth in the specification." *Baran v. Medical Device Techs, Inc.*, 616 F.3d 1309, 1316-17 (Fed. Cir. 2010) (citing 35 U.S.C. § 112, ¶ 6); *see also Applied Med. Res. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("Literal infringement of a means-plus-function limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification.").

This framework requires a two-step analysis: *first*, one must identify the "relevant structure" in the accused device that performs the recited function, and then *second* determine whether this "relevant structure" is identical or equivalent to the corresponding structure in the specification. *Baran*, 616 F.3d at 1316-17; *Applied Med.*, 448 F.3d at 1333.

### V. ARGUMENT

#### A. Mr. Miller Properly Applied the Legal Framework

Contrary to Koki's contention, Mr. Miller's opinion on the "push portion" means-plus-function claim limitation clearly follows the legal framework set forth by the Federal Circuit concerning infringement of a means-plus-function limitation.

*First*, Mr. Miller identified "the **relevant structure** in the [JoistPro that] perform[s] the identical function recited in the claim." *Id*. As explained above in Section III.C, Mr. Miller consistently opined that Dr. Vallee incorrectly identified

6

the *relevant structure* of the JoistPro that carries out the claimed function and instead identified only a *subset* of the relevant structure. (*See also, e.g.*, Flynn Decl., Ex. E (Miller Rebuttal), ¶39 (The components identified by Dr. Vallee "do not perform the claimed function because the JoistPro's safety mechanism also requires additional pneumatic components and a pressurized air supply to operate.")). Mr. Miller further concluded that the JoistPro's entire safety mechanism, including those pneumatic components, constitute the *relevant structure*. (Flynn Decl., Ex. E (Miller Rebuttal), ¶¶40-44 (describing the various pneumatic components that make up the JoistPro's safety mechanism)).

*Second*, Mr. Miller determined whether "the *relevant structure* in the [JoistPro is] . . . *identical* or *equivalent* to the corresponding structure in the specification." *Applied Med.*, 448 F.3d at 1333. Mr. Miller concluded that the relevant structure, the JoistPro's entire safety mechanism, was not *identical* to the corresponding structure of the claimed "push portion." (Flynn Decl., Ex. E (Miller Rebuttal), ¶47 ("there are seven essential differences between the JoistPro 150XP and the teaching of the '987 Patent," including that "the JoistPro 150XP's safety mechanism is pneumatically powered and needs additional components to perform the claimed function")). Mr. Miller also disagreed with Dr. Vallee's opinion that the JoistPro's safety mechanism is *equivalent* to the corresponding structure of the "push portion," pointing out that Dr. Vallee "does not explain how the JoistPro

7

150XP has structure equivalent to the 'push portions' structure" and that "the 'way' the JoistPro 150XP achieves the claimed function is through the use of pneumatic components whereas the '987 Patent uses purely mechanical component to achieve the function."  (*Id.*, ¶48).

Thus, Mr. Miller concluded that the JoistPro does not have a "push portion" as required by the asserted claims of the '987 Patent.  (*Id.*).  Nowhere in his analysis does Mr. Miller stray from the framework set forth by the Federal Circuit, and thus Mr. Miller's non-infringement opinion is not based on an incorrect legal standard as Koki contends.

### B.  Koki Ignores the Legal Standard under Which a Means-Plus-Function Limitation Must Be Analyzed

While Mr. Miller's opinion concerning non-infringement of the "push portion" limitation is clearly not legally erroneous, Koki relies on inapplicable case law and selective citations to try to reach the opposite conclusion.  However, when Koki's cited cases are considered in their proper contexts, they actually demonstrate that Mr. Miller's opinion was legally proper and should not be excluded.

Koki's position that Mr. Miller's opinion is legally erroneous is primarily based on Koki's contention that "[i]t has long been held that '[a]n accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent.'"  (Koki Br. at 6) (quoting *Acme Highway Prods. Corp. v. D.S. Brown Co.*, 473 F.2d 849, 885 (6th Cir. 1973), *cert. denied* 414 U.S.

8

824 (1973); *see also SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327 (Fed. Cir. 1999); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476 (Fed. Cir. 1984)). *First*, do not concern infringement of means-plus-function limitations which, as discussed above, require a specialized infringement analysis that Mr. Miller followed in his analysis. (*See supra* Section IV). *Second*, Mr. Miller did not simply point out various unrelated, unclaimed features on the JoistPro that "are simply and totally irrelevant" to the question of infringement as the accused infringer did in these cases. *Amstar*, 730 F.2d at 1484. Rather, Mr. Miller identified the ***relevant structure*** that carries out the claimed function of the "push portion," and thus it is undoubtedly relevant to the question of infringement. *Applied Med.*, 448 F.3d at 1333.

Koki also incorrectly contends that "all that is required for infringement is that the structural elements identified in the Court's claim construction are present in the JoistPro 150XP" and then cites to several cases that do not support this conclusion. (Koki Br. at 6). For example, Koki cites to *I-Flow Corp. v. Wolf Med. Supply, Inc.*, No. SACV 09-0762-AG (MLGx), 2009 WL 10697983, at *5-6 (C.D. Cal. Sept. 28, 2009), incorrectly stating that the District Court found a means-plus-function claim term infringed because "modification by mere addition of elements or functions cannot negate infringement." (Koki Br. at 6). But the term at issue, "support member," was not a means-plus-function limitation, and the Court rejected the

9

accused infringer's argument that the accused device lacked a "support member" "because its support member is made of two attached parts and Plaintiff's is made of one." *I-Flow*, 2009 WL 10697983, at *5. Koki also cites to *Bernard Dalsin Mfg. Co. v. RMR Prods., Inc.¸* 2001 WL 482374, 10 F. App'x 882, 888 (Fed. Cir. 2001). (Koki Br. at 6). But there, the Court rejected the accused infringer's argument that the lack of "direct[] contact" between two claimed components "will not exclude a finding of infringement." *Bernard*, 10 F. App'x at 888. Nowhere do either of these non-precedential cases state or even suggest that one must ignore structure in an accused product that is necessary to perform the claimed function of a means-plus-function limitation, as suggested by Koki.

Koki also relies on *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324 (Fed. Cir. 2005) to support its position, incorrectly concluding that "Mr. Miller makes the same legal error as the accused infringer" in *JVW*. (Koki Br. at 6). Koki relies on selective citations to conclude that the Federal Circuit held that "the fact that the accused product may include ***additional structure for performing the function*** does not avoid infringement." (*Id.*). But the Federal Circuit made no such holding.

Instead, the Court followed its own precedent, which requires "that the ***relevant structure*** in the accused device perform the identical function recited in the claim and be identical or equivalent to the structure identified in the written

10

description as corresponding to the recited function." *JVW*, 424 F.3d at 1333. Under this framework, the Court rejected the accused infringer's identification of the ***relevant structure*** in the accused device. *Id*. at 1333-34. While the accused infringer argued that ***additional*** components were necessary to carry out the claimed function, the Court disagreed, holding that "the clips in the [accused product] perform the identical claimed function of 'receiving and locking a video game controller into a fixed position on the mounting member for use'" without the need for the ***additional*** components identified by the accused infringer. *JVW*, 424 F.3d at 1333. The Court further held that these "additional components" actually "perform [the] ***un***claimed functions" of allowing the video game controller to be adjusted in various ways, and thus these components were irrelevant to the question of infringement. *Id*. at 1334; *see also id*. at 1333 ("The fact that the [accused product] adds a shell to allow the steering wheel height to be adjusted and a cam mechanism to provide a mechanical way to tighten and loosen the clips does not mean that the clips do not lock the steering wheel in a fixed position."). Thus, contrary to Koki's assertion, the Court never held that "the fact that the accused product may include ***additional structure for performing the function*** does not avoid infringement." (Koki Br. at 7). Thus, Mr. Miller's opinion that the JoistPro 150XP does not have a "push portion" because it needs additional components to perform the claimed function is entirely consistent with the Federal Circuit's opinion in *JVW*.

11

Koki concludes its argument by citing to case law on ***claim construction*** that is irrelevant to the question of ***infringement*** once the term has been construed. (Koki Br. at 7). Koki points out that, in ***construing*** "push portion" as a means-plus-function limitation, "the Court identified only the minimum structure necessary to perform the [claimed] function," and then suddenly pivots back to the question of ***infringement***, concluding that "the accused device must contain *at least* that structure defined by the Court to perform the claimed function, but it may also contain additional structure to perform the function." (*Id*. at 7-8). But this unsupported conclusion is of course *contrary* to Federal Circuit precedent, which requires identification of "the relevant structure in the accused device [that] perform[s] the identical function recited in the claim" and ***not*** a sub-set of the relevant structure. *Applied Med.*, 448 F.3d at 1333.

## VI.   CONCLUSION

For the foregoing reasons, the Court should deny Koki's motion.

|  |  |
|---|---|
| | */s/ Kelly E. Farnan* |
| | Kelly E. Farnan (#4395) |
| | Richards, Layton & Finger, P.A. |
| | One Rodney Square |
| OF COUNSEL: | 920 North King Street |
| | Wilmington, DE 19801 |
| Robert S. Rigg | (302) 651-7700 |
| David Bernard | farnan@rlf.com |
| John K. Burke | |
| Vedder Price P.C. | *Attorneys for Defendant Kyocera* |
| 222 North LaSalle Street | *Senco Industrial Tools, Inc.* |
| Chicago, IL  60601 | |
| (312) 609-7500 | |
| rrigg@vedderprice.com | |
| dbernard@vedderprice.com | |
| jburke@vedderprice.com | |

Dated:  July 10, 2020

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

The foregoing DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN OPINIONS OF MR. KEVEN MILLER complies with the type-volume limitations of Paragraph 12(b) of the Scheduling Order (D.I. 14). The text of this brief, including footnotes, was prepared in Times New Roman 14-point. According to the word processing system used to prepare it, this brief contains 2,822 words, excluding the case caption, tables, and signature block. Defendant's opposition to Koki's *Daubert* and summary judgment motions are a combined 9,334 words, excluding the case captions, tables, and signature blocks.

Dated: July 10, 2020

/s/ *Kelly E. Farnan*
Kelly E. Farnan (#4395)

VP/#37280303.3