IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KOKI HOLDINGS CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-313 (CFC) |
| | ) | |
| KYOCERA SENCO INDUSTRIAL | ) | |
| TOOLS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT THAT
U.S. PATENT NOS. 7,156,012 AND 7,398,647 ARE NOT INVALID**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Plaintiff Koki Holdings Co.,
Ltd.*

OF COUNSEL:

Paul Devinsky
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC  20001
(202) 756-8000

Amol A. Parikh
Thomas DaMario
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL  60606
(312) 372-2000

July 24, 2020

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   ARGUMENT.................................................................................................2

    A.    The Asserted Prior Art Does Not Meet the '012 and '647
Ratio Limitations ..............................................................................2

        1.    The '012 and '647 Ratio Limitations Require the
Cross-Sectional Area of the First Channel/Main Valve
Control Channel be the Cross-Sectional Area of a Single
Channel...................................................................................2

        2.    There is No Genuine Dispute that Kyocera Cannot
Prove That the SN325+ Model Anticipates Claim 1 of
the '647 Patent and Claim 1 of the '012 Patent ....................7

        3.    There is No Genuine Dispute that Kyocera Cannot
Prove That the SN325+ Model Renders Obvious Claims
1 and 10 of the '647 Patent and Claims 1-4 of the '012
Patent ....................................................................................8

    B.    There is No Genuine Dispute that Kyocera Cannot Prove
That the SN325+ Model Qualifies as Prior Art Under 35 U.S.C.
§ 102 ...............................................................................................11

III.  CONCLUSION............................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Comm'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) ...........................................................................8

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  761 F.3d 1329 (Fed. Cir. 2014) ...........................................................................4

*Arendi S.A.R.L. v. Apple, Inc.*,
  832 F.3d 1355 (Fed. Cir. 2016) .........................................................................10

*Baer v. Chase*,
  392 F.3d 609 (3d Cir. 2004) .............................................................................13

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*
  512 F.3d 1338 (Fed. Cir. 2008) ...........................................................................6

*CANVS Corp. v. Nivisys, LLC*,
  No. 2:14-CV-99-FTM-38MRM, 2015 WL 6560621
  (M.D. Fla. Oct. 29, 2015) ................................................................................4, 5

*Dana Corp. v. American Axle & Mfg., Inc.*,
  279 F.3d 1372 (Fed. Cir. 2002) ....................................................................11, 12

*Duncan Parking Techs. v. IPS Group Inc.*,
  914 F.3d 1347 (Fed. Cir. 2019) ...........................................................................5

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ......................................................................3, 5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  234 F.3d 558 (Fed. Cir. 2000) .............................................................................5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002)............................................................................................5

*Group One, Ltd. v. Hallmark Cards, Inc.*,
  254 F.3d 1041 (Fed. Cir. 2001) .........................................................................15

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
   99 F.3d 1098 (Fed. Cir. 1996) ...................................................................3, 5

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
   751 F.3d 1327 (Fed. Cir. 2014) ......................................................................9

*KCJ Corp. v. Kinetic Concepts, Inc.*
   223 F.3d 1351 (Fed. Cir. 2000) ......................................................................6

*KSR Intern. Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007)......................................................................................8, 9

*Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.*
   322 F.3d 1335 (Fed. Cir. 2003) ....................................................................15

*Linear Tech. Corp. v. Micrel, Inc.*,
   275 F.3d 1040 (Fed. Cir. 2001) ....................................................................15

*Medichem, S.A. v. Rolabo, S.L.*,
   437 F.3d 1157 (Fed. Cir. 2006) ....................................................................10

*Modine Mfg. Co. v. U.S. Intern. Trade Comm'n*,
   75 F.3d 1545 (Fed. Cir. 1996) ........................................................................5

*PAR Pharm., Inc. v. TWI Pharms., Inc.*,
   773 F.3d 1186 (Fed. Cir. 2014) ....................................................................10

*Pfaff v. Wells Elecs., Inc.*,
   525 U.S. 55 (1998)............................................................................12, 14, 15

*Scaltech Inc. v. Retec/Tetra, L.L.C.*,
   178 F.3d 1378 (Fed. Cir. 1999) ....................................................................14

*Suffolk Techs., LLC v. AOL Inc.*,
   752 F.3d 1358 (Fed. Cir. 2014) ......................................................................6

*Summit Tech., Inc. v. Nidek Co., Ltd.*,
   363 F.3d 1219 (Fed. Cir. 2004) ......................................................................3

*TQ Delta, LLC v. CISCO Sys., Inc.*,
   942 F.3d 1352 (Fed. Cir. 2019) ......................................................................9

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ..............................................................................5

*Woodland Trust v. Flowertree Nursery, Inc.*,
    148 F.3d 1368 (Fed. Cir. 1998) ........................................................................11

## I.    INTRODUCTION

There are no genuine issues of material fact that need to be resolved at trial to determine that the asserted claims of the '012 and '647 patents are not anticipated and/or obvious in view of the SN325+ model that Kyocera relies on as prior art.

As to claim construction, the intrinsic evidence demonstrates that the term "cross sectional area of the [first channel/main valve control channel]" as used in the '647 and '012 patents (collectively the "Ratio Limitations") means the cross-sectional area of a *single* channel (as asserted by Koki), and not the combined cross-sectional area of *multiple separate channels* (as asserted by Kyocera). Under the proper construction, there is no genuine dispute that the version of the SN325+ model that Kyocera relies on as prior art does not teach, suggest, or disclose the Ratio Limitations.

There is also no evidence demonstrating that the SN325+ model was in public use or on sale before the critical date. Kyocera admits that the specific SN325+ model on which it relies is a production archive that was never in public use or on-sale. Kyocera also has no evidence linking any of the witness testimony or documents on which it relies for purposes of public use or on-sale to the version of the SN325+ that it compared to the asserted claims. This lack of evidence is significant given undisputed testimony that the features of the SN325+ model have

changed over time. Therefore, Kyocera cannot meet its burden to establish that the SN325+ model is prior art.

## II.    ARGUMENT

### A.    <u>The Asserted Prior Art Does Not Meet the '012 and '647 Ratio Limitations</u>

#### 1.    The '012 and '647 Ratio Limitations Require the Cross-Sectional Area of the First Channel/Main Valve Control Channel be the Cross-Sectional Area of a Single Channel

Kyocera misses the point when arguing that nothing in the asserted claims precludes the '012 and '647 patent from having multiple channels between the main valve chamber and trigger valve chamber. (*See* D.I. 155 "Kyocera Ans. Br." at 15-20.) That is not the relevant inquiry. Instead, the relevant inquiry is whether the Ratio Limitation is calculated using the cross-sectional area of a *single* channel, as asserted by Koki, or the *combined* cross-sectional area of *multiple separate channels*, as asserted by Kyocera.

As explained in Koki's Opening Brief, the intrinsic evidence demonstrates that "cross-sectional area of the [first channel/main valve control channel]" is the cross-sectional area of a *single* channel, and not the *combined* cross-sectional area of *multiple separate channels*. The plain language of the asserted claims use singular, not plural, language stating that the ratio is determined from the cross-sectional area of the "first channel" or the "main valve control channel." (*See* D.I.

2

137 "Koki Op. Br." at 13.) Nothing in the claim indicates that the ratio can be calculated by *combining* the cross-sectional areas of multiple separate channels.[1]

Kyocera fails to distinguish *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996). (*See* Kyocera Ans. Br. at 16-17.) In *Insituform*, the court limited "a cup" to a "single cup," stating:

> [N]othing in the text of claim 1 suggests the use of more than one cup. Specifically, claim 1 refers to "a cup" and "the cup" repeatedly, suggesting that only one cup is involved. Indeed, rather than describing the process in terms of more than one cup, claim 1 specifically describes using the same cup repeatedly. Also, claim 1 uses the phrase "region of vacuum application" in a manner indicating that only one such region exists at any given time.

*Id.* at 1105-06. Similarly, not only do the asserted claims of the '012 and '647 patent refer to "a first channel / a main valve control channel" suggesting only one channel is involved, but the claims further require that the ratio is calculated from the cross-sectional area of that single channel, further indicating that the claimed Ratio requires a cross-sectional area of a single channel. Kyocera's attempt to summarily distinguish *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1342 (Fed. Cir. 2016), *Summit Tech., Inc. v. Nidek Co., Ltd.*, 363 F.3d 1219, 1228 (Fed. Cir.

---

[1]     By way of analogy, if a claim recites a chair comprising a leg having a cross-sectional area of at least three square inches, it would be improper to allege that a prior art chair with four legs each having cross sectional area of one square inch invalidates the claim because the combined cross sectional area of all four legs in the prior art chair is four square inches and all the legs perform the same function. (*See* Ex. R at 28, fn. 3.)

2004), and *CANVS Corp. v. Nivisys, LLC*, No. 2:14-CV-99-FTM-38MRM, 2015 WL 6560621, at *2-*3 (M.D. Fla. Oct. 29, 2015) fail for the same reason.

Turning to the specification, Kyocera incorrectly states that nothing in the specification limits the cross-sectional area to that of a single channel. (*See* Kyocera Ans. Br. at 18-20.) As explained in Koki's Opening Brief, every embodiment in the specification discloses that the cross-sectional area is calculated for a single channel. (Koki Op. Br. at 15-17.) The specification also exalts the benefit of using a single channel, explaining that optimizing the ratio between the cross-sectional area of the single main valve control channel (S1) and the volume of the main valve chamber (V1) allows the invention to achieve rapid firing while reducing the consumption of compressed air. (*See e.g.*, SF. 15-17; Ex. A at col. 3:21-24, 14:26-15:4, 19:60-20:33, 29:39-62, FIG. 10; *see also* Koki Op. Br. at 14-16.) There is no suggestion that having multiple channels would achieve the same benefits.

The specification thus confirms that the only correct interpretation of the asserted claims is that the Ratio Limitation is calculated using the cross-sectional area of a *single* channel. *See, e.g., Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 761 F.3d 1329, 1338-40 (Fed. Cir. 2014) (district court properly limited term "enhancement" to require a "distributed" enhancement and not cover a "centralized" enhancement because the specification only described "distributed"

enhancement and touted its advantages); *see also Insituform*, 99 F.3d at 1106 ("neither the specification nor the drawings disclose the use of more than one cup"); *Enfish*, 822 F.3d at 1342 ("specification makes clear that the invention is directed to the arrangement of a single, logical table"); *CANVS*, 2015 WL 6560621, at *2-*3 (specification's singular description of "a line of sight" warrants finding the term means "a single line of sight").

Kyocera's attempt to combine the cross-sectional areas of multiple separate channels to calculate the ratio also cannot be correct because it impermissibly would read out every single embodiment disclosed in the specification. *See Duncan Parking Techs. v. IPS Group Inc.*, 914 F.3d 1347, 1365 (Fed. Cir. 2019) (rejecting construction that excluded the preferred embodiment disclosed in the specification) citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (a claim construction that excludes the preferred embodiment is "rarely, if ever, correct and would require highly persuasive evidentiary support"); *see also Modine Mfg. Co. v. U.S. Intern. Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996) (abrogated by *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000) and reinstated by 535 U.S. 722 (2002)) ("a claim interpretation that would exclude the inventor's device is rarely the correct interpretation, such an interpretation requires highly persuasive evidentiary support … whether from the specification, the prosecution history, or the prior art")

Kyocera has provide no evidentiary support that requires construing the claim to exclude every embodiment disclosed in the specification.

Recognizing that neither the claims nor the specification support its proposed construction, Kyocera resorts to attorney argument, without any citation to evidence, stating that the firing speed of a tool can be increased by using "a single channel with a large cross-sectional area or having multiple channels that combine to provide a larger cross-sectional area." (*See* Kyocera Ans. Br. at 19.) Kyocera's attorney argument is insufficient to defeat summary judgment, especially because there is record evidence to the contrary. *See Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1367 (Fed. Cir. 2014) (granting summary judgment, finding attorney argument insufficient to undermine credible expert testimony). Specifically, there is undisputed record evidence that firing speeds in a single channel and multiple channels are not the same because "[multiple] channels having the same length as a single channel will have very different flow characteristics and a larger pressure drop across the channels" due to "wall friction." (Ex. S at ¶ 255.)

Kyocera's reliance on *KCJ Corp. v. Kinetic Concepts, Inc.* and *Baldwin Graphic Sys., Inc. v. Siebert, Inc.* is misplaced. (Kyocera Ans. Br. at 15-16.) In *KJC*, the Court found that nothing in the claim language or specification suggested that "a chamber" was limited to one continuous chamber. *See* 223 F.3d 1351, 1357

(Fed. Cir. 2000). In *Baldwin*, the Court similarly found that the term "a pre-soaked fabric roll" was not limited to a single roll because nothing in the specification required a single pre-soaked fabric roll. *See* 512 F.3d 1338, 1344 (Fed. Cir. 2008). Conversely, as discussed above, in the '012 and '647 patent, the claims recite, and every embodiment in the specification describes, that the "cross-sectional area of the [first channel/main valve control channel]" is the cross-sectional area of a *single* channel.

Accordingly, the proper interpretation of the '012 and '647 Ratio Limitations requires that the "cross-sectional area of the [first channel/main valve control channel]" be the cross-sectional area of a single channel, and not the combined cross-sectional area of multiple separate channels.

### 2. There is No Genuine Dispute that Kyocera Cannot Prove That the SN325+ Model Anticipates Claim 1 of the '647 Patent and Claim 1 of the '012 Patent

Kyocera wrongly asserts that if Koki's proposed construction is correct, factual issues still remain as to whether the asserted claims are invalid. (*See* Kyocera Ans. Br. at 20.) Kyocera, however, does not dispute that under Koki's proposed construction of "cross sectional area of the [first channel/main valve control channel]" the SN325+ model does not anticipate claim 1 of the '647 patent and claim 1 of the '012 patent because it does not meet the '012 and '647 Ratio Limitations. Instead, Kyocera contends only that the asserted claims would be

obvious. Thus, summary judgment of no anticipation based on the SN325+ model should be granted.

### 3.    There is No Genuine Dispute that Kyocera Cannot Prove That the SN325+ Model Renders Obvious Claims 1 and 10 of the '647 Patent and Claims 1-4 of the '012 Patent

Kyocera is also incorrect that genuine factual issues remain as to whether the asserted claims are obvious under Koki's construction because Kyocera's expert opined that "the SN325+'s four crossover holes are 'equivalent to using a single crossover hole (or 'first channel') having the same cross-sectional area as the four crossover holes combined." (*See* Kyocera Ans. Br. at 20-21 citing Ex. R17 at ¶ 390.) Mr. Miller's opinion is insufficient to preclude summary judgment for several reasons.

First, Mr. Miller merely asserts conclusory that four holes are equivalent to a single hole, and he does not explain how a single channel is equivalent to multiple channels. Such a conclusory statement does not raise a genuine dispute precluding summary judgment. *See KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 426-27 (2007) (expert's conclusory obviousness opinion did not preclude summary judgment holding claims invalid); *ActiveVideo Networks, Inc. v. Verizon Comm'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012) (affirming non-obviousness finding where obviousness opinions offered by infringer's expert were conclusory and lacked factual support finding the expert failed to explain how specific references

could be combined, which combination(s) of elements in specific references would yield a predictable result, or how any specific combination would operate or read on the asserted claims).

Second, Mr. Miller's failure to provide any reason or motivation to modify Ishizawa is fatal to Kyocera's obviousness case. "A patent composed of several elements is not proved obvious by merely demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 418. Instead, there must be some "articulated reasoning with some rational underpinning" to make the asserted combinations." *Id*. Nowhere does Mr. Miller explain: (1) why a skilled artisan would have used the ratio derived from dividing the volume of a chamber by the *combined area of four separate channels* in the SN325+ as the particular ratio of the volume of the chamber and the area of the *single* channel in Ishizawa; (2) whether such a modification is technically possible; (3) how a skilled artisan would carry out the modification; or (4) whether such a modification would even yield a predictable result. Such showings are the touchstone of an obviousness inquiry. *See id.*; *see also InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1349 (Fed. Cir. 2014) (reversing judgment of invalidity because expert improperly relied on the challenged patent itself as a roadmap and the expert's testimony primarily consisted of conclusory references to the expert's belief that one of ordinary skill in the art could combine these references); *TQ Delta, LLC v.*

9

*CISCO Sys., Inc.*, 942 F.3d 1352, 1361 (Fed. Cir. 2019) (reversing obviousness where expert only offered conclusory expert testimony on that issue). The record is thus devoid of any evidence sufficient to support an obviousness finding.

Kyocera wrongly accuses Koki of improperly attacking Kyocera's prior art combination by pointing out that neither reference practices the claimed ratio individually. (Kyocera Ans. Br. at 21.) To establish obviousness, however, Kyocera must prove that all of the elements are found in the prior art. *See PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1194 (Fed. Cir. 2014) (motivation to combine and reasonable expectation of success may be found only "if all the elements of an invention are found in a combination of prior art references") (citing *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1164 (Fed. Cir. 2006)).[2]  Koki properly asserts that the Kyocera's prior art combination does not disclose the Ratio Limitations because neither of the references individually teaches the Ratio Limitations.

Summary judgment of no obviousness based on Ishizawa and the SN325+ model should therefore be granted.

---

[2]     The exception to this requirement is that "common sense" can be used to supply a missing limitation in a prior art reference if explained with sufficient reasoning. *See Arendi S.A.R.L. v. Apple, Inc.*, 832 F.3d 1355, 1361 (Fed. Cir. 2016). As noted above, Mr. Miller provides only a conclusory statement that four holes are equivalent to a single hole, and does not explain how a single channel is equivalent to multiple channels.

**B.**     <u>There is No Genuine Dispute that Kyocera Cannot Prove That the SN325+ Model Qualifies as Prior Art Under 35 U.S.C. § 102</u>

Kyocera's opposition confirms it cannot meet its burden to prove, by clear and convincing evidence, that the SN325+ model qualifies as prior art. "When the asserted basis of invalidity is a public use or on-sale bar, the court should determine whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention." *See Dana Corp. v. American Axle & Mfg., Inc.*, 279 F.3d 1372, 1375 (Fed. Cir. 2002) (internal citations omitted). Kyocera offers no evidence that proves that the particular version of the SN325+ model that Kyocera alleges meets the limitations of the asserted claims was ever on sale[3] or publicly available.

Kyocera admits the specific physical sample of the SN325+ on which it relies was "retained in the Kyocera Senco Engineering Lab as a production archive sample since it was manufactured." (SF. 25; Ex. G at 7; D.I. 163 "Shoemake Decl." at ¶¶ 7-9.) Such secret use does not meet public use or on-sale requirements under § 102. *See Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) ("[W]hen an asserted prior use is not that of the applicant,

---

[3]     Prior to its opposition, Kyocera never alleged the asserted claims of the '012 and '647 patents were invalid based on the sale of the SN325+. Instead, Kyocera's invalidity contentions were limited to public availability of the SN325+. (D.I. 105, Ex. 9 at 4). Kyocera's Interrogatory Responses also never contend that the SN325+ was on sale. (*See* Ex. G at 4-6.) Although the Court should reject Kyocera's attempt to add its new theory of invalidity based on the on-sale bar, resolution of this issue does not preclude summary judgment.

§ 102(b) is not a bar when that prior use or knowledge is not available to the public."); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998) (holding that the on-sale bar requires the product be the subject of a commercial offer for sale).

Recognizing there is no genuine dispute that the physical sample of the SN325+ on which it relies is not prior art, Kyocera pivots, now asserting that "focus on the physical model is off-base" and there is a "collection of evidence" that purportedly demonstrates the SN325+ was "widely sold." (Kyocera Ans. Br. at 26.) As a threshold matter, focus on the physical sample is appropriate since that is the only product that Kyocera has mapped to the asserted claims, and in particular to the Ratio Limitations. (*See* Ex. G at 7, Ex. R17 at ¶ 389-395.)[4] It is particularly important in this case because, as Kyocera admits, there have been many iterations of the SN325+ over the years with "significant changes" between those iterations. (*See* SF 28; Ex. N at 202:8-19.) Thus, to succeed under its public use and/or on-sale defense, Kyocera must establish that the *specific* model of the SN325+ that it mapped to the asserted claims was publicly available, and not just that some other versions of the SN325+ were publicly available. *See Dana Corp.*, 279 F.3d at 1375.

---

[4]     When Kyocera sought to add the SN325+ to the case after the close of discovery, it represented to the Court that it has "made clear that it intended to rely on the actual product as prior art" and "the claim charts submitted with the Initial Contentions mapped elements of the physical product." (*See* D.I. 109 at 2; *see also* Ex. G at 7 ("Defendant intends to rely on the physical sample of the SN325+ Nailer that was identified in the Initial Expert Report of Keven Miller at trial").)

The purported "collection of evidence" does not help Kyocera because none of it proves that ***the particular version of the SN325+ model*** on which Kyocera relies was publicly available as of the critical date. For instance, although Mr. Shoemake alleges that a "SN325+ Nailer was sold and publicly available in the United States in the 1990s" (Shoemake Decl. at ¶ 7), he provides no evidence that the particular SN325+ model with the particular features on which Kyocera relies was ever publicly available or on sale. Similarly, neither Kyocera nor Mr. Shoemake offer any evidence linking the physical SN325+ model which Kyocera compared to the asserted claims to any of the documents. (Shoemake Decl. at ¶¶ 10-15; Ex. S20-S25.[5]) At best, Mr. Shoemake's testimony indicates that *some* version of the SN325+ was publicly available. This is important because Kyocera admits that there have been "significant changes" to the SN325+ design over the years. (SF 28; Ex. N at 202:8-19.)[6] Thus, simply stating that some version of the SN325+ was publicly available or that certain documents may have been publicly

---

[5]    Ex. R15-R19 are attached to the Declaration of Robert Rigg (D.I. 166), Ex. S20-S25 are attached to the Declaration of Charlie Shoemake (D.I. 163) and Ex. M26 is attached to the Declaration of Thomas McCardle (D.I. 164).

[6]    Kyocera now asserts through Mr. McCardle that Kyocera discontinued the SN325+ in 1999, despite prior sworn testimony from Mr. McCardle that Kyocera is currently selling the SN325+. Mr. McCardle's uncorroborated contradictory testimony should be disregarded under the sham affidavit doctrine. *See Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004). Even if the testimony is not disregarded, this new fact does not preclude summary judgment because Kyocera still cannot prove that the particular version of the SN25+ on which it relies was publicly available as of the critical date.

available does not prove that the particular SN325+ model alleged to invalidate the asserted claims was publicly available. *See Scaltech Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999) (for an on-sale bar to apply, the device sold, or offered for sale, must embody each and every limitation of the claimed invention).

There is also no genuine dispute that the documents cited by Kyocera do not themselves disclose any of the subject claim limitations. Neither Kyocera, Mr. Shoemake, nor Mr. Miller assert that Exhibits S20-S25 show the presence of any limitations of the asserted claims, including the Ratio Limitations. (*See* Shoemake Decl. at ¶¶ 10-15; Ex. R17 at ¶ 389-395.) Mr. Miller also does not rely on the engineering drawings (Ex. M26) to show the volume of the main valve chamber required by the Ratio Limitations, and Kyocera's corporate witness admitted that none of the drawings show the Ratio Limitations because none of the documents disclose the volume of the main valve chamber. (*See* Ex. R17 at ¶ 389-395; Ex. T at 219:9-13; 224:3–225:8.)

Kyocera's reliance on *Pfaff* to assert that a physical sample is not necessary to demonstrate the invalidating product was on-sale or in public use is misguided. In *Pfaff*, the Supreme Court stated that drawings could be used to show an invention is ready for patenting for purposes of the on-sale bar only if the drawings "were sufficiently specific to enable a person skilled in the art to practice the

invention." 525 U.S. at 67-68. In contrast here, the documentary evidence on which Kyocera relies admittedly would not enable a skilled artisan to practice the claimed invention. Kyocera also has provided no evidence that the particular SN325+ model on which it relies was ever the subject of a commercial offer for sale. *Id*. at 67 (on-sale bar applies when product is subject to commercial offer for sale and is ready for patenting).[7]

Kyocera's citation to *Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc.* actually supports Koki's position. In *Lacks Indus.*, the Federal Circuit found the on-sale bar did not apply because the documentary evidence did not corroborate the witness's testimony that a device manufactured using the claimed method was on sale or in public use. 322 F.3d 1335, 1349 (Fed. Cir. 2003). In particular, the court found the documents contained no connection between the project being discussed in the document and the product asserted to be prior art and further contained no description of the subject claim limitation. *Id*. 1350 ("[t]he

---

[7]      Koki also disputes that the evidence shows that any model of the SN325+ was subject to a commercial offer for sale. *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001) ("[o]nly an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b).") Advertisements and other promotional materials such as those relied upon by Kyocera do not constitute an offer for sale. *See Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1051 (Fed. Cir. 2001). However, resolution of that issue does not preclude summary judgment since Kyocera has not proven that the advertisement and promotional materials relate to the particular SN325+ model on which it relies.

document contains no identification of the affiliation of [the author], no connection between the project being discussed and the unmentioned Hayes F 150 prototype wheels, and no description of the adhesive application pattern or quantity.") The documents relied upon by Kyocera are similarly deficient because they have no connection to the specific SN325+ model mapped to the asserted claims and contain no description of the Ratio Limitations.

Because Kyocera cannot prove the specific SN325+ model was in public use or on sale before the critical date, Kyocera cannot show that the SN325+ is prior art under 35 U.S.C. § 102. Therefore, summary judgment should be granted of no invalidity as to the SN325+ model.

## III.    CONCLUSION

For the foregoing reasons, Koki respectfully requests that the Court enter summary judgment that Kyocera has not proven that the asserted claims of the '012 and '647 patents are invalid as anticipated or obvious.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

OF COUNSEL:

Paul Devinsky
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC  20001
(202) 756-8000

Amol A. Parikh
Thomas DaMario
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL  60606
(312) 372-2000

July 24, 2020

*Attorneys for Plaintiff Koki Holdings Co., Ltd.*

## <u>CERTIFICATE OF COMPLIANCE WITH<br>TYPE-VOLUME LIMITATION</u>

The foregoing complies with the type-volume limitations of paragraph 12(b) of the Scheduling Order (Doc No. 14). The text of this brief, including footnotes, was prepared in Times New Roman 14-point. According to the word processing system used to prepare it, the brief contains 4,060 words, excluding the case caption and signature block.

Dated: July 24, 2020                          */s/ Michael J. Flynn*
                                                          Michael J. Flynn (#5333)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 24, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 24, 2020, upon the following in the manner indicated:

Kelly E. Farnan, Esquire                                    *VIA ELECTRONIC MAIL*
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendant Kyocera Senco*
*Industrial Tools, Inc.*

Robert S. Rigg, Esquire                                    *VIA ELECTRONIC MAIL*
David Bernard, Esquire
John K. Burke, Esquire
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL  60601
*Attorneys for Defendant Kyocera Senco*
*Industrial Tools, Inc.*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)